**Charles BANKSTON, Sr., Administrator of the Estate of Charles Bankston, Jr., Deceased; and Regina Dixon, Plaintiffs,**

v.

**TOYOTA MOTOR CORPORATION; Toyota Motor Sales U.S.A., Inc.; and Toyota Motor Distributors, Inc., Defendants.**

No. 88–1084.

United States District Court, W.D. Arkansas, El Dorado Division.

Jan. 4, 1989.

**596**

E.C. Gilbreath, Jones, Gilbreath, Jackson & Moll, Fort Smith, Ark., for plaintiffs.

Tilden P. Wright, III, Davis, Cox & Wright, Fayetteville, Ark., for defendants.

### ORDER

OREN HARRIS, Senior District Judge.

Plaintiffs bring this products liability action seeking damages resulting from an accident involving a Toyota truck. Defendant Toyota Motor Corporation (Toyota), a Japanese corporation, filed a motion to dismiss, contending that plaintiffs had not properly obtained service of process on it pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965 (Hague Service Convention), [1969] 20 U.S.T. 361, T.I.A.S. No. 6638.[1] On September 2, 1988, the Court entered an Order denying the motion to dismiss, and granting plaintiffs 45 days in which to obtain service of process on Toyota pursuant to the Hague Service Convention. Plaintiffs now move the Court to reconsid-

er its Order of September 2, 1988. Toyota has responded to the motion.

Both parties have favored the Court with numerous citations to decisions of other courts and to law review articles pertaining to the issue of obtaining service of process over a party whose residence is in a foreign nation which is a signatory nation to the Hague Service Convention. The Court has carefully reviewed this material, as well as the Hague Service Convention itself, in determining the course to take in the present case.

The Hague Service Convention is a multilateral treaty that was formulated in 1964 for the purpose of providing a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* —— U.S. ——, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988). The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries. 20 U.S.T. 362, T.I.A.S. 6688, Art. 2. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. Art. 5. The central authority must then provide a certificate of service that conforms to a specified model. Art. 6. A state may also consent to methods of service within its boundaries other than a request to its central authority. Arts. 8–11, 19. *Volkswagenwerk, supra.* Both Japan and the United States are signatory nations to the Convention.

Following the Court's Order of September 2, 1988, plaintiffs attempted to serve process by means of U.S. registered mail upon Toyota in Japan. The documents thus mailed by plaintiffs were in English, and did not include a translation into the Japanese language. Plaintiffs, citing authorities, contend that this method is suffi-

---

1. Also found at 28 U.S.C.A., Fed.R.Civ.P., Rule 4, 1988 Supplement, beginning at page 121.

cient to obtain service of process over the foreign defendant, and complies with the requirements of Article 10(a) of the Convention. This much-litigated article provides:

> Provided the State of destination does not object, the present Convention shall not interfere with—
>
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad.[2]

It appears that this provision has given rise to two distinct lines of interpretation. First, some courts have held that Article 10(a) permits service of process to be obtained through use of the mails, without the necessity of resorting to the central authority established by the Convention, and without the necessity of translating the documents into the official language of the nation where the documents are to be served. This, of course, is the line of authority plaintiffs urge the Court to follow. Cases plaintiffs cite which follow this line of reasoning include: *Lemme v. Wine of Japan Import, Inc.,* 631 F.Supp. 456 (E.D. N.Y.1986); *Weight v. Kawasaki Heavy Industries, Ltd.,* 597 F.Supp. 1082 (E.D.Va. 1984); *Chrysler Corporation v. General Motors Corporation,* 589 F.Supp. 1182 (D.D.C.1984); *Tamari v. Bache & Co.,* 431 F.Supp. 1226 (N.D.Ill.1977); and *Shoei Kako Co., Ltd. v. Superior Court,* 33 Cal. App.3d 808, 109 Cal.Rptr. 402 (1973). Plaintiffs additionally cite two unreported cases, *Creasy v. American Honda Motor Co., Inc.,* No. 86–1202 (W.D.Tenn. Feb. 26,

1987); and *Tidmore, Adm. v. Yamaha Motor Co., Ltd.,* No. CIV 88–39 (Circuit Court, Searcy County, Ark. Oct. 17, 1988).[3]

The second line of interpretation, advocated by Toyota, is that the word "send" in Article 10(a) is not the equivalent of "service of process," and that the word "service" is specifically used in other sections of the Convention, including sections (b) and (c) of Article 10. If Article 10(a) was intended to designate a method for obtaining service of process, the drafters of the treaty could have used the word "service" instead of the word "send." Subscribers to this interpretation maintain that Article 10(a) merely provides a method for sending subsequent documents after service of process has been obtained by means of the central authority.

To support its view, Toyota cites the following cases: *Pochop v. Toyota Motor Co., Ltd.,* 111 F.R.D. 464 (S.D.Miss.1986); *Mommsen v. Toro Co.,* 108 F.R.D. 444 (S.D.Iowa 1985); *Suzuki Motor Co., Ltd. v. Superior Court,* 200 Cal.App.3d 1476, 249 Cal.Rptr. 376 (1988); *Ordmandy v. Lynn,* 122 Misc.2d 954, 472 N.Y.S.2d 274 (N.Y. Sup.Ct.1984); and *Reynolds v. Koh,* 109 A.D.2d 97, 490 N.Y.S.2d 295 (1985).[4]

After giving considerable attention to this matter, this Court has concluded that the second view is the more logical of the two, and that Article 10(a) does not permit service of process by registered mail on the Japanese defendant. Treaties are to be interpreted very carefully. In an early case, Chief Justice Marshall wrote:

---

**2.** Sections (b) and (c) of Article 10 provide as follows:

(b) the freedom of judicial officers or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Japan has specifically objected to sections (b) and (c) of Article 10, but not to section (a). *See* 28 U.S.C.A., Fed.R.Civ.P., Rule 4, 1988 Supplement, at 131.

**3.** Plaintiffs also rely on *Volkswagenwerk, supra.* That case, however, deals only with obtaining

service of process over a foreign defendant by serving its domestic subsidiary. There is no allegation in the complaint here, nor any other indication in the record, that defendants Toyota Motor Sales U.S.A., Inc., or Toyota Motor Distributors, Inc., are subsidiaries of the Japanese defendant, Toyota Motor Corporation. Therefore, the Court cannot assume that such a relationship exists.

**4.** Both plaintiffs and Toyota claim that their respective interpretations are held by a majority of the courts that have ruled on this issue. This Court has neither the time nor the resources to make an exhaustive study of the question to determine which view is actually the majority view.

Treaties are formed upon deliberate reflection. Diplomatic men read the public treaties made by other nations and cannot be supposed either to omit or insert an article, common in public treaties, without being aware of the effect of such omission or insertion. Neither the one nor the other is to be ascribed to inattention.

*The Nereide,* 13 U.S. (9 Cranch) 388, 419, 3 L.Ed. 769 (1815). In *Rocca v. Thompson,* 223 U.S. 317, 331–32, 32 S.Ct. 207, 210–11, 56 L.Ed. 453 (1912), the Court stated:

But it is urged that treaties are to be liberally construed. Like other contracts, they are to be read in light of the conditions and circumstances existing at the time they were entered into, with a view to effecting the objects and purposes of the states thereby contracting. (Citation omitted.)

It is further to be observed that treaties are the subject of careful consideration before they are entered into and are drawn by persons competent to express their meaning, and to choose apt words in which to embody the purposes of the high contracting parties.

Plaintiffs rely most heavily on the decision of the California Court of Appeal in *Shoei Kako Co., Ltd. v. Superior Court,* 33 Cal.App.3d 808, 109 Cal.Rptr. 402 (1973). There, the court, without being sufficiently advised of methods prescribed by Japanese law for service of documents, concluded that service of process on a Japanese party by registered mail was sufficient to bring that party into an American court.

Another division of the same court has recently declined to follow *Shoei Kako.* In *Suzuki Motor Co., Ltd. v. Superior Court,* 200 Cal.App.3d 1476, 249 Cal.Rptr. 376 (1988), the court determined that service of process by registered mail was not permitted under Japanese law, and that, therefore, it was "extemely unlikely" that Japan's failure to object to Article 10(a) of the Hague Service Convention was intended to authorize the use of registered mail as an effective mode of service of process, particularly in light of the fact that Japan specifically objected to the much more for-mal modes of service by Japanese officials which were available in Article 10(b) and (c). *See* 249 Cal.Rptr. at 379.

As in *Suzuki,* this Court has been presented with evidence of the methods of service of process permitted under the internal law of Japan. The Court has before it an article published in a Japanese legal periodical. Sakai and Pickard, "Service of Process on a Japanese Defendant to Commence a Foreign Lawsuit," *Yuasa and Hara Patent News,* (Summer 1978), 5–13 (English ed.). This article concisely sets forth the methods for obtaining service of process in Japan. The following paragraph is relevant to the present case:

Article 161 of the Code of Civil Procedure of Japan (the "CPL") states that "Business relating to service is transacted by the Court Clerk." Article 161 is imperative and does not allow for any other form of service of process. There is no "freedom" in Japan for the plaintiff's attorney to send validly effective judicial documents directly to the defendant, as such word is used in Article 10(a) of the Convention.

*Id.* at 8. The authors conclude:

It is doubtful whether proper service can be made on a Japanese defendant under Article 10(a) of the Convention, by postal channels. A Japanese court would probably refuse to hold such service vaild for the reason that it is defective under Article 200(c) of the Japanese CPL. Further, such a manner of service may be subject to challenge in the United States' court for failure of due process.

*Id.* at 11–12.

The court in *Suzuki Motor Co., supra* 249 Cal.Rptr. at 379, summarized the method of obtaining service of process in Japan as follows:

As indicated by ... Peterson, "Jurisdiction and the Japanese Defendant," *Santa Clara L. Rev.* (1985) 555, 576–79, Japan ... does not allow either attorneys or laypeople to serve process by mail. To effectuate service of process through the mail, *the court clerk* stamps the outside of the envelope containing the required documents with a notice of special ser-

vice ... and the mail-carrier acts as a *special officer of the court* by recording proof of delivery on a special proof form and returning this proof of service *to the court.* [Emphasis in original.]

The Court is inclined to agree with the reasoning of a leading expert in the area of Japanese law:

> Some questions have been raised as to whether section 10(a) of the Convention allows service of process by mail. In my opinion it does not. The question of service by mail is not addressed by the Convention; it merely discusses the right to send subsequent judicial documents by mail. Any other process would be a rather illogicial result, as the Convention sets up a rather cumbersome and involved procedure for service of process; and if this particular provision allowed one to circumvent the procedure by simply sending something through the mail, the vast bulk of the Convention would be useless.

E. Charles Routh, "Litigation Between Japanese and American Parties," *Current Legal Aspects of Doing Business in Japan and East Asia,* J. Haley, ed. (A.B.A.1978) 190–191.

The Court finds it inconceivable that the drafters of the Convention would use the word "send" in Article 10(a) to mean service of process, when they so carefully used the word "service" in other sections of the treaty. The Court is, therefore, of the opinion that plaintiffs' attempt to serve process on Toyota by means of U.S. registered mail is not sufficient, and the method of obtaining service established by the Hague Service Convention must be utilized in order to properly serve Toyota.

In order to comply with the Convention and with this Order, the complaint and other documents to be served must be translated into the Japanese language, as is required when service of process is obtained through the central authority, as it must be here. The parties have agreed that, should the Court reach the result it has reached here, plaintiff should be given 60 days from the date of this Order in which to effectuate service of process over Toyota in Japan.

IT IS THEREFORE CONSIDERED, ORDERED, AND ADJUDGED that plaintiffs' motion to reconsider be and the same is hereby denied. The Court's Order of September 2, 1988, will remain in effect.

IT IS FURTHER ORDERED that plaintiffs be given 60 days from the date of this Order in which to effectuate service of process over defendant Toyota Motor Corporation, in compliance with the terms of the Hague Service Convention. The parties shall report to the Court at the end of 60 days concerning the status of this matter.