**Michael McCLENON, II, et al., Plaintiffs,**

v.

**NISSAN MOTOR CORPORATION IN U.S.A., et al., Defendants.**

**No. 89–30220–RV.**

United States District Court, N.D. Florida, Pensacola Division.

Sept. 25, 1989.

 

Henry T. Courtney, Miami, Fla., for plaintiffs.

Craig P. Niedenthal, Orlando, Fla., for Nissan U.S.A. and Nissan Motor Co. Ltd.

C. Miner Harrell, Pensacola, Fla., for Alvin T. Prestwood, as adm'r of the Estates of Patricia Sansone and also Sansone.

## ORDER

VINSON, District Judge.

This case arises from injuries sustained in a June 13, 1987, automobile accident in Florida. The case was originally filed in state court, but it has now been removed to this court on diversity grounds. The defendants include Nissan Motor Corporation in U.S.A. ("Nissan U.S.A."), a United States corporation doing business in Florida, and Nissan Motor Co., Ltd. ("Nissan Ltd."), its Japanese parent corporation. Prior to removal, the state court had denied defendant Nissan Ltd.'s motion to quash service of process, by order entered August 7, 1989. Pending is defendant Nissan Ltd.'s motion for reconsideration of its motion to quash service of process. (Doc. 26) For the reasons stated below, the motion to reconsider and the motion to quash service of process are GRANTED.

### I. *Procedural Background*

On May 26, 1989, plaintiffs attempted to serve Nissan Ltd. with process pursuant to Sections 48.161 and 48.181, *Florida Statutes* (1987), which provide for a method of substituted service of process. Specifically, plaintiffs served the Florida Secretary of State with the summons and complaint, and as provided for in Section 48.161, plaintiffs then sent Nissan, Ltd., by certified mail to Japan, an English-language copy of the summons and complaint. Nissan, Ltd. received the mailing on June 7, 1989. At no time did it receive personal service of process.

Nissan, Ltd. claims that service was improper because it did not comply with the "Hague Service Convention," a 1965 multinational treaty to which the U.S. and

Japan are signatories. "Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters," 20 U.S.T. 361. By virtue of the supremacy clause of Article VI of the Constitution of the United States, the Convention preempts inconsistent methods of service prescribed by state law in all cases to which it applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, ——, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722, 730 (1988).

The motion to quash presents two issues: (1) does the Hague Service Convention apply to this case?; and (2) if so, did plaintiffs comply with its requirements? [1]

## II. *Applicability of the Hague Convention*

The United States Supreme Court has set out the test for the applicability of the Hague Service Convention in *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). *Schlunk* concerned an Illinois wrongful death action similar to the instant case. Defendants included Volkswagenwerk Aktiengesellschaft (VWAG), a German automobile manufacturing company, and Volkswagen of America (VWoA), its American subsidiary. Instead of serving VWAG in accordance with the Hague Service Convention, the plaintiff served the subsidiary as the alleged agent of the German company. The Illinois courts denied VWAG's motions to quash service, holding as a matter of Illinois law that the parent and subsidiary were so closely related that the subsidiary was the parent's agent for service of process. *Schlunk, supra*, 486 U.S. at ——, 108 S.Ct. at 2106, 100 L.Ed.2d at 729.

▆▆▆▆▆▆ Supreme Court of the United States upheld the Illinois courts' denial of the motions to quash service. The Convention itself states that it shall apply "in all cases ... where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Schlunk, supra*, at ——, 108 S.Ct. at 2107, 100 L.Ed.2d at 730, *citing* 20 U.S.T. 362, 362. The Court held that whether an "occasion ... for service abroad" existed depended on the internal law of the forum state. In each case, a court must determine whether the forum's state law requires the sending of process abroad. "If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." At ——, 108 S.Ct. at 2108, 100 L.Ed.2d at 731.

[3]▆▆▆ applicable Florida law here comes from Section 48.161, *Florida Statutes* (1987), "Method of substituted service on nonresident," and Section 48.181, "Service on nonresident engaging in business in state." The latter section provides that where a defendant engages in business within Florida, the Secretary of State is the agent for process in any action involving such business. § 48.181(1), *Fla.Stat.* (1987).

The procedure for accomplishing service on the Secretary of State is set out in Section 48.161. The plaintiff must provide a copy of the process and a $5.00 fee with the Secretary of State. In addition, "[n]otice of service and a copy of the process shall be sent forthwith by registered or certified mail by the plaintiff or his attorney *to the defendant....*" § 48.161, *Fla. Stat.* (1987) (emphasis added). This provision requires the sending of notice and process directly to the defendant, in addition to service upon the Secretary of State.

---

1. Article 5 of the Hague Service Convention provides that each nation shall designate a Central Authority to receive service of process for parties within its borders. 20 U.S.T. 362, Art. 5. Japan has designated the Minister for Foreign Affairs as its Central Authority. Unless direct, personal service is "incompatible with the law of the State addressed," service "may always be served by delivery to an addressee who accepts it voluntarily." *Id.*

Article 5 further provides that:

> ... the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the state addressed.
> That part of the request, in the form attached to the present convention, which contains a summary of the document to be served, shall be served with the document. *Id.*

Japan requires translation into Japanese.

For purposes of this case, the Florida Statute requires "the transmittal of documents abroad"—to Nissan, Ltd., the defendant. Under *Schlunk*, therefore, the Hague Service Convention applies, and service was improper.

### III. *The Requirements of the Convention*

Although the elaborate requirements of the Hague Service Convention's Article 5, involving service through a nation's "Central Authority," would seem to remove all doubt as to the inadequacy of the plaintiffs' direct service by mail, the Convention contains language which suggests a different result. Article 10, which has given rise to much litigation, sets out three exceptions:

> Provided the State of destination does not object, the present Convention shall not interfere with ...
>
> (a) the freedom to *send* judicial documents, by postal channels, directly to persons abroad.
>
> (b) the freedom of judicial officers or other competent persons of the State of origin to effect *service* of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.
>
> (c) the freedom of any person interested in a judicial proceeding to effect *service* of judicial documents directly through the judicial officers, officials or other competent persons of the State of designation. (Emphasis added).

Some courts [2] have held that Article 10(a) allows direct service of a foreign defendant by mail, as plaintiffs have done in this case.[3] Other courts have held that the language in 10(a) does not refer to formal service of process, and thus does not authorize direct service.[4]

Pursuant to the opening language of Article 10, Japan has specifically objected to Article 10(b) and Article 10(c), but not to Article 10(a). 28 U.S.C.A., Fed.R.Civ.P., Rule 4, (West 1989 Supp.), at 140. This omission can be interpreted to mean either that Japan consents to direct service by mail, or that Article 10(a) does not refer to formal service and there was no reason for Japan to object.

A private handbook on the Convention published by the Hague Conference on Private International Law states that "Japan has not declared that it objects to *service* through postal channels." *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* (1983), Art. V (emphasis added). On the other hand, the Japanese do not allow service except through the court clerk. It would, therefore, be extraordinary if Japan would allow service in the manner described in Article 10(a).

There is support for this notion. First, it is unlikely that the Japanese would object to the more formal service methods, but consent to the most informal. *Bankston v. Toyota Motor Corp.*, 123 F.R.D. 595, 598 (W.D.Ark.1989); *Suzuki Motor Co., Ltd. v. Superior Court*, 200 Cal.App.3d 1476, 1479, 249 Cal.Rptr. 376, 379 (1988). In addition, at least one Japanese legal article has concluded that direct mailing of service would be insufficient under Japanese law— specifically, Article 200(c) of the Code of Civil Procedure of Japan. Sakai & Pickard, "Service of Process on a Japanese Defendant to Commence a Foreign Lawsuit,"

---

**2.** *See Lemme v. Wine of Japan Import, Inc.*, 631 F.Supp. 456 (E.D.N.Y.1986); *Weight v. Kawasaki Heavy Industries, Ltd.*, 597 F.Supp. 1082 (E.D.Va.1984); *Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182 (D.D.C.1984); *Tamari v. Bache & Co.*, 431 F.Supp. 1226 (N.D.Ill.1977); and *Shoe Kako Co., Ltd. v. Superior Court*, 33 Cal.App.3d 808, 109 Cal.Rptr. 402 (1973).

**3.** Since a Japanese translation is required only when service is accomplished through the Central Authority, plaintiffs' failure in this case to translate the service documents is not fatal if

Article 10(a) does in fact allow direct service by mail. *See Wight v. Kawasaki Heavy Industries, Ltd.*, 597 F.Supp. 1082, 1086 (E.D.Va.1984).

**4.** *Bankston v. Toyota Motor Corp.*, 123 F.R.D. 595 (W.D.Ark.1989); *Pochop v. Toyota Motor Co., Ltd.*, 111 F.R.D. 464 (S.D.Miss.1986); *Mommsen v. Toro Co.*, 108 F.R.D. 444, 446 (S.D. Iowa 1985); *Ormandy v. Lynn*, 122 Misc.2d 954, 472 N.Y.S.2d 274 (N.Y.Sup.Ct.1984); *Reynolds v. Koh*, 109 A.D.2d 97, 490 N.Y.S.2d 295 (1985).

*Yuasa and Hara Patent News,* (Summer 1978), 5–13 (English ed.), *cited in Bankston, supra,* 123 F.R.D. at 598.

The term "judicial documents" is used throughout Article 10, and can reasonably be construed as applying to orders, notices, motions, and all other such litigation-related documents. It is not a term that can be restricted to the summons and complaint. Therefore, Article 10(a) may merely make clear that such post-service official documents need not be routed through the Central Authority, or meet the Convention's burdensome requirements of translation and the like.

■ I find that Article 10(a) does not apply to authorize service of process by mail upon a Japanese defendant, for two reasons. First, as a leading expert in Japanese law noted:

> The question of service by mail is not addressed by the Convention; it merely discusses the right to send subsequent judicial documents by mail. Any other process would be a rather illogical result, as the Convention sets up a rather cumbersome and involved procedure for service of process; and *if this particular provision allowed one to circumvent the procedure by simply sending something through the mail, the vast bulk of the Convention would be useless.*

E. Routh, "Litigation Between Japanese and American Parties," *Current Legal Aspect of Doing Business in Japan and East Asia,* J. Haley, ed. (A.B.A.1978) 190–191, *quoted in Bankston, supra,* 123 F.R.D. at 599.

Second, it strains plausibility that the Conventions' drafters would use the word "send" in Article 10(a) to mean service of process, when they so carefully used the word "service" in 10(b) and 10(c). Therefore, I interpret the Convention to disallow direct service by mail. The plaintiffs' service is inadequate under the Convention.

### IV. *Use of Nissan U.S.A. as Agent For Process*

■ Consideration of this issue also requires that I review the application of Section 48.181(3), *Florida Statutes* (1987). That section, together with subsection 48.-181(1), provides that if a nonresident defendant does business in the forum through "brokers, jobbers, wholesalers, or distributors," then service on such jobber, distributor, etc., is proper as service on an agent for process. If, under Florida law, Nissan, U.S.A. is such an agent, then plaintiffs' service on that company would be proper service upon Nissan, Ltd.

The fact that a party served within the state is a wholly owned subsidiary of another company does not, by itself, support substituted service under Florida law. *Mac Millan–Bloedel, Ltd. v. Canada,* 391 So.2d 749, 751 (Fla. 5th DCA 1980); *Volkswagenwerk Atkiengelselischaft v. McCurdy,* 340 So.2d 544, 546 (Fla. 1st DCA 1976). The plaintiff must show that the parent corporation "exercised such a degree of control over its subsidiary that the activities of the subsidiary were in fact the activities of the parent within the state ..." *McCurdy, supra,* 340 So.2d at 546; *see also Mac Millan–Bloedel,* 391 So.2d at 751.

In *Deere & Co. v. Watts,* 148 So.2d 529 (Fla. 3d DCA 1963), the court found that this test had been met. The court emphasized the facts that the parent owned 100% of the subsidiary's stock and voted it at all stockholders' meetings; each company had its own board of directors, officers, and employees, but many held offices in both corporations; and while the corporations' records were kept separate, their respective financial statements were consolidated in the annual report, which referred to the subsidiary as a "branch" of the parent. *Deere & Co., supra,* 148 So. at 530.

However, no such facts are alleged by the plaintiffs in the pleadings in this case. Florida courts have repeatedly held that statutes providing for substituted service must be strictly construed. One seeking to effect service thereunder has the burden of presenting facts which clearly justify the applicability of the statute. *McCurdy, supra,* 340 So.2d at 545; *American Baseball Cap, Inc. v. Duzinski,* 308 So.2d 639 (Fla. 1st DCA 1975).

Where substituted service is involved, legally insufficient allegations in the com-

plaint are grounds for quashing service of process; the defendant need only file a simple, unsupported motion to quash. *Elmex Corp. v. Atlantic Federal Savings & Loan Ass'n*, 325 So.2d 58 (Fla. 4th DCA 1976). In *McCurdy*, the court, after ruling that plaintiff had not met the burden of "clearly proving that [defendant] was amenable to substituted service of process pursuant to F.S. § 48.181," held that the motion below to quash should have been granted. *McCurdy, supra*, 340 So.2d at 546. Since plaintiffs have not alleged any facts which would support finding Nissan U.S.A. as Nissan, Ltd.'s agent under Section 48.181(3), that provision is inapplicable.

However, plaintiffs should be given additional time to effect proper service.

### V. *Conclusion*

For the reasons above, service upon defendant Nissan, Ltd. must satisfy the requirements of the Hague Service Convention. Because the plaintiffs did not comply with the relevant portions of that Convention, defendant Nissan, Ltd.'s motions to reconsider and to quash are hereby GRANTED. Plaintiffs shall have 30 days from the date of this order to effect service upon Nissan, Ltd. in accordance with the Hague Service Convention, including adherence to Japan's translation requirements. Discovery against Nissan, Ltd. is stayed for the duration of this period.

DONE AND ORDERED.