John A. GALLAGHER, et al.

v.

MAZDA MOTOR OF AMERICA, INC., et al.

Civ. A. No. 91–6640.

United States District Court,
E.D. Pennsylvania.

Jan. 6, 1992.

M. Patricia Carroll, Carroll & Carroll, Philadelphia, Pa., for plaintiffs.

Mary Grace Maley, Lavin, Coleman, Finarelli & Gray, Philadelphia, Pa., for defendant.

## OPINION

CAHN, District Judge.

On January 1, 1990, John and Judith Gallagher, husband and wife, were traveling with their four children, Gabriella, Yolanda, Laura and Dewi, in their 1989 Mazda MPV motor vehicle when they were involved in an accident.[1] As a result of the accident, Judith, Gabriella and Yolanda were killed, and John, Laura and Dewi were injured. This suit has been brought by John, in his individual capacity and in his capacity as representative for the other Gallagher plaintiffs, against Mazda Motor of America, Inc. ["Mazda of America"] and Mazda Motor Corp. ["Mazda of Japan"]. Mazda of Japan has moved, pursuant to Fed.R.Civ.P. 12(b)(4) and Fed.R.Civ.P. 12(b)(5) to dismiss, or, in the alternative, to quash the plaintiffs' service of process.[2]

According to the pleadings, the plaintiffs attempted to avail themselves of Fed. R.Civ.P. 4(c)(2)(C)(ii) in two ways; by sending a copy of the Notice and Acknowledgement of Receipt of Summons and Complaint, Summons, and Complaint via registered mail to Mazda Motor Corp., 3–1 Sinchi, Funchu–Cho, Aki–Gun Hiroshima 730–91, Japan, and by sending two copies of the above mentioned documents to Mazda Motor Corp., P.O. Box 19735, Irvine, Ca. 92713–0017. All of these documents were in English. The court will discuss the sufficiency of both of these methods of service of process *seriatim.*

## I. *Mailing to Hiroshima, Japan*

When process is served abroad, its validity is governed by the Convention on Service Abroad of Judicial and Extraju-

dicial Documents in Civil and Commercial Matters, 20 UST 361, TIAS No. 6638 ["Hague Convention"]. *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988); *Raffa v. Nissan Motor Co.,* 141 F.R.D. 45, 45 (E.D.Pa.1991); *Wasden v. Yamaha Motor Co., Ltd.,* 131 F.R.D. 206, 207 (M.D.Fla.1990).[3] Since the Hague Convention has a preemptive effect, *see Volkswagenwerk,* 486 U.S. at 699, 108 S.Ct. at 2107, a court need look no further when considering the validity of service abroad. Since the process mailed to Hiroshima, Japan was unquestionably served abroad, its validity must be determined by reference to the Hague Convention, and Mazda of Japan is entitled to insist on strict compliance with its provisions. *See Sheets v. Yamaha Motors Corp., U.S.A.,* 891 F.2d 533, 536 (5th Cir.1990).

The validity of the service of process mailed to Hiroshima, Japan must be determined by reference to Article 10 of the Hague Convention.[4] Article 10 provides:

Provided the State of destination does not object, the present Convention shall not interfere with—

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad.

(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other

---

1. According to the complaint, this accident was the result of an icy road and a defective vehicle.

2. Mazda of America has not joined in this Motion.

3. Both the United States and Japan are signatories to the Hague Convention.

4. Although other Articles of the Hague Convention provide for alternative methods of service of process, *see* Article 2 (relating to the establishment of a Central Authority in each signatory state to receive the service of process); Article 8 (relating to service of process through diplomatic channels); Article 9 (same), it is not contended that the plaintiffs have complied with any of these articles.

competent persons of the State of destination.

Since Japan has objected to paragraphs (b) and (c) of Article 10, *see Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 173 (8th Cir.1989), the process mailed to Hiroshima, Japan is valid, if at all, if it was made in accordance with paragraph (a) of Article 10.

There are two distinct lines of cases interpreting the scope of paragraph (a) of Article 10. One line of cases has held that the term "send" in paragraph (a) is equivalent to "serve", and that, absent an objection, paragraph (a) permits the service of process by mail on any foreign party. *See Ackermann v. Levine*, 788 F.2d 830, 839–40 (2d Cir.1986); *Meyers v. Asics Corp.*, 711 F.Supp. 1001, 1007–08 (C.D.Cal.1989); *Sandoval v. Honda Motor Corp.*, 527 A.2d 564, 566 (Pa.Super.1987);[5] *Shoei Kako Co., Ltd. v. Superior Court*, 33 Cal.App.3d 808, 109 Cal.Rptr. 402, 411 (1973). This line of cases also holds that it is unnecessary to translate the process before serving it. *See Sandoval*, 527 A.2d at 567; *Shoei Kako*, 109 Cal.Rptr. at 413.

The second line of cases holds that paragraph (a) of Article 10 only provides for the service of *subsequent* papers after service of process has been effectuated by other means, and does not provide an independent method for the service of process. *See Bankston*, 889 F.2d at 174; *Raffa*, 141 F.R.D. at 46; *Wasden*, 131 F.R.D. at 209; *McClenon v. Nissan Motor Corp. in U.S.A.*, 726 F.Supp. 822, 826 (N.D.Fla. 1989); *Prost v. Honda Motor Co., Ltd.*, 122 F.R.D. 215, 216 (E.D.Mo.1987); *Cooper v. Makita, U.S.A., Inc.*, 117 F.R.D. 16, 17 (D.Me.1987); *Suzuki Motor Co., Ltd. v. Superior Court*, 200 Cal.App.3d 1476, 249 Cal.Rptr. 376 (1988).

Although the Third Circuit Court of Appeals has not yet decided how to interpret paragraph (a) of Article 10, Judge Newcomer has recently visited this area of the law. *See Raffa v. Nissan Motor Co.*, 141 F.R.D. 45 (E.D.Pa.1991). This court finds

his reasoning highly persuasive, and therefore follows him in adopting the rationale behind the second line of cases. Specifically, the court finds it implausible that Japan, which objected to the "less intrusive" paragraphs (b) and (c), and which does not permit service of process by certified mail in domestic cases, *see Bankston*, 889 F.2d at 174; *Raffa*, 141 F.R.D. at 46–47; *McClenon*, 726 F.Supp. at 825, would consent to the service of foreign process by mail. This, combined with the fact that the Hague Convention uses the term "service" in all other articles, rather than the term "send", *see Bankston*, 889 F.2d at 173; *Raffa*, 141 F.R.D. at 46; *McClenon*, 726 F.Supp. at 826, leads this court to hold that paragraph (a) of Article 10 of the Hague Convention does not provide a basis for the service of process on foreign parties to a lawsuit. The process service on Mazda of Japan by mail to Hiroshima, Japan is therefore quashed.

## II. *Mailing to Irvine, California*

■ Although the Hague Convention controls when process is served abroad, it does not require service to be made abroad whenever a foreign corporation is a party to a lawsuit. *See Volkswagenwerk*, 486 U.S. at 707–08, 108 S.Ct. at 21; *Sheets*, 891 F.2d at 537; *King v. Perry and Sylva Machinery Co.*, 766 F.Supp. 638, 639 (N.D.Ill.1989). For this reason, the process served in Irvine, California does not implicate the Hague Convention. If process was mailed to Mazda of Japan at a California address, the requirements of Fed. R.Civ.P. 4(c)(2)(C)(ii) would have been met, and the service would be valid. It is not clear at this point in time, however, that the process mailed to California was served on Mazda of Japan. Mazda of Japan strenuously argues that the process was mailed to, and therefore served on, Mazda of America.

In order to show that the process mailed to California constituted valid service of process on Mazda of Japan, the plaintiffs

---

**5.** Although the position of the Pennsylvania State courts is of interest to this Federal Court, a state court's interpretation of a federal treaty is not binding on a federal court, even if the federal court's jurisdiction is based on diversity. *See Meyers,* 711 F.Supp. at 1007.

will have to show[6] either of two things: 1) that the post office box in Irvine, California belongs to Mazda of Japan, rather than Mazda of America; or 2) that, although the post office box in Irvine, California belongs to Mazda of America, service of process on Mazda of America is effective against Mazda of Japan because the jurisdictional contacts of Mazda of America should be imputed to Mazda of Japan.[7] The court will hold a hearing to establish these jurisdictional facts. *See Haase v. Sessions*, 835 F.2d 902, 908 (D.C.Cir.1987) (a trial court may weigh evidence to establish jurisdictional facts); *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977) (same); *Allen Organ Co. v. Kawai Musical Instruments Manufacturing Co., Ltd.*, 593 F.Supp. 107, 108 (E.D.Pa. 1984); *cf. Santos v. State Farm Fire and Casualty Co.*, 902 F.2d 1092, 1095 (2d Cir. 1990) (discussing the relationship between Fed.R.Civ.P. 12(b)(5) and Fed.R.Civ.P. 12(b)(2) ); *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 290 (3d Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981) (discussing the interrelationship between jurisdiction and service of process).[8]

■ If the plaintiffs are unable to sustain their burden of demonstrating that service of process was validly made upon Mazda of Japan, the court will quash the service and allow the plaintiffs to attempt to re-serve Mazda of Japan in accordance with the Hague Convention. *See Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir.1983); *Henkel Corp. v. Degremont, S.A.*, 136 F.R.D. 88, 97–98 & n. 13 (E.D.Pa.

1991) (discussing the distinction between quashing service of process and dismissal); *Dunakey v. American Honda Motor Co., Ltd.*, 124 F.R.D. 638, 639 (E.D.Mo.1989) (quashing service of process but allowing a plaintiff to attempt to re-serve defendant in accordance with the Hague Convention).

Although the parties will have little trouble deciding what evidence must be presented in order to establish that the Irvine, California post office box belongs to Mazda of Japan, the law is currently unclear as to when the jurisdictional contacts of a subsidiary may be imputed to the parent corporation. In order to provide guidance to the parties, the court will set forth the requirements for imputing such contacts.

While it is clear that the bare parent / subsidiary relationship does not allow a court to impute the jurisdictional contacts of the subsidiary to the parent, *see Wasden*, 131 F.R.D. at 209; *McClenon*, 726 F.Supp. at 826; *Meyers*, 711 F.Supp. at 1004, there are, in essence, three lines of cases dealing with when imputing jurisdictional contacts is proper. The first line of cases follows *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335–37, 45 S.Ct. 250, 250–52, 69 L.Ed. 634 (1925), and holds that, so long as both the parent and subsidiary corporations observe and respect the corporate form, the jurisdictional contacts of the subsidiary will not be imputed to the parent. *See Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773–74 (5th Cir.1988); *I.A.M. National Pension Fund v. Wakefield Industries,*

---

**6.** The plaintiff bears the burden of establishing the requisite jurisdictional facts. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). Similarly, a plaintiff bears the burden of proving that the contacts of a subsidiary corporation should be imputed to the parent. *See Lasky v. Continental Products Corp.*, 97 F.R.D. 716, 716–17 (E.D.Pa.1983).

**7.** It must be noted that if the jurisdictional contacts of Mazda of America are imputed to Mazda of Japan, they will be imputed for the purposes of Fed.R.Civ.P. 12(b)(2) as well as for the purposes of Fed.R.Civ.P. 12(b)(4) and Fed.

R.Civ.P. 12(b)(5). The fact that counsel for Mazda of Japan will almost certainly move to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) if the plaintiffs can effect service on Mazda of Japan under the Hague Convention should serve as an incentive for the plaintiffs either to show that the jurisdictional contacts of Mazda of America can be imputed to Mazda of Japan, or to dismiss Mazda of Japan from this lawsuit.

**8.** Although no court has explicitly held to this effect, it is the case that when the jurisdictional contacts of a subsidiary corporation are imputed to the parent corporation, service of process on the subsidiary is effective against the parent. *Cf. King*, 766 F.Supp. at 639–40.

699 F.2d 1254, 1258–59 (D.C.Cir.1983); *Leach Co. v. General Sani-Can Manufacturing Corp.*, 393 F.2d 183, 186 (7th Cir. 1968); *Savin Corp. v. Heritage Copy Products, Inc.*, 661 F.Supp. 463, 467–68 (M.D.Pa.1987); *Indian Coffee Corp. v. Procter & Gamble Co.*, 482 F.Supp. 1098, 1104 (W.D.Pa.1980), *aff'd in part on other grounds*, 752 F.2d 891 (3d Cir.), *cert. denied*, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985).

The other two lines of cases set a lower threshold for imputing the jurisdictional contacts of a subsidiary to the parent corporation.[9] One line of cases holds that contacts should be imputed when the parent corporation exercises total control over the affairs and activities of the subsidiary, and can therefore be said to be the subsidiary's alter ego. *See Patent Incentives, Inc. v. Seiko Epson Corp.*, 1988 Westlaw 92460 at *6 (D.N.J. September 6, 1988), *aff'd*, 878 F.2d 1446 (Fed.Cir.1989) (table); *Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F.Supp. 393, 399 (W.D.Va. 1987); *Colcord v. Armstrong World Industries, Inc.*, 1985 Westlaw 17481 at *3 (D.Colo. May 13, 1985) ("the notion of a separate corporate existence of a parent and subsidiary will not be recognized where one corporation is so organized and controlled, and its business conducted in such a manner, as to make it merely an agency, instrumentality, adjunct, or alter ego of another corporation.... By the same reasoning, the acts of the subsidiary may be imputed to the parent for purposes of personal jurisdiction.") (citations omitted); *Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F.Supp. 227, 237 (D.Del.1984) ("In order to find that a subsidiary is the alter ego or instrumentality of the parent, the Plaintiff must prove: 'control by the parent to such a degree that the subsidiary has become its mere instrumentality.'") (citations omitted); *Lavrov v. NCR Corp.*, 591 F.Supp. 102, 109 (S.D. Ohio 1984); *S & S Industries, Inc. v. Nakamura–Tome Precision Industries Co., Ltd.*, 93 F.R.D. 564, 568–69 (D.Minn.1982). *Cf. Key v. Liquid Energy Corp.*, 906 F.2d 500, 503 (10th Cir.1990) (discussing the liability of a corporate parent for acts of a subsidiary in a tort context).

The other line of cases holds that contacts should be imputed when the subsidiary was either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself. *See Mirrow v. Club Med, Inc.*, 118 F.R.D. 418, 419–20 (E.D.Pa.1986) ("Also important is the fact that in marketing the vacation packages, Club Med Sales performs a function that Club Med itself would otherwise have to perform.... Here, Club Med Sales effectively operates as the sales department in the United States for Club Med. This allocation of functions implies that the two entities work in concert. Such a relationship between parent and subsidiary helps to illustrate that the subsidiary 'is merely the incorporated department of its parent.'") (Pollak, J.) (citations omitted); *Allen Organ Co.*, 593 F.Supp. at 111–12 (imputing contacts of a wholly owned subsidiary whose sole function was to distribute the parent's products); *Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd.*, 508 F.Supp. 1322, 1342 (E.D.N.Y.1981) ("There are undoubtedly special reasons [the defendant] has chosen to operate in this country by means of incorporated subsidiaries. But

---

**9.** These cases assume that when the Supreme Court abandoned the "presence" requirement of *Pennoyer v. Neff*, 95 U.S. 714, 725–27, 24 L.Ed. 565 (1877), and adopted the "minimum contacts" test for jurisdiction in *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 158–59, 90 L.Ed. 95 (1945), the Supreme Court also abandoned the strict "presence" requirement of *Cannon*. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63–67 (3d Cir.1984) (discussing the requirements for "minimum contacts" as related to service of process). *See also Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)

("so far as due process is concerned [the adequacy of substituted service of process] is dependent on whether or not the form of substituted service provided for such cases and employed is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard. If it is, the traditional notions of fair play and substantial justice implicit in due process are satisfied.") (citations omitted). This court agrees with this assumption. *See Patent Incentives, Inc. v. Seiko Epson Corp.*, 1988 Westlaw 92460 at n. 15 (D.N.J. September 6, 1988), *aff'd*, 878 F.2d 1446 (Fed. Cir.1989) (table); *Allen Organ Co.*, 593 F.Supp. at 110.

these subsidiaries almost by definition are doing for their parent what their parent would otherwise have to do on its own. The question to ask is not whether the American subsidiaries can formally accept orders for their parent, but rather whether, in the truest sense, the subsidiaries presence substitutes for the presence of the parent.") (Weinstein, C.J.); *K.J. Schwartzbaum, Inc. v. Evans, Inc.*, 44 F.R.D. 589, 590–91 (S.D.N.Y.1968) ("where a corporation has a wholly-owned subsidiary performing services which would ordinarily be performed by its own service employees, or where its subsidiary exists for the purpose of making product purchases which otherwise would be made by purchasing agents of defendant corporation, the parent company should not be allowed to hide behind the corporate fiction but, rather, should be required to submit to the jurisdiction of the court located in that District in which the parent corporation, for all intents and purposes, transacts its business.") (citations omitted).

■ The court is persuaded that the last line of cases is the correct one, and that the jurisdictional contacts of a subsidiary corporation should be imputed to the corporate parent when the subsidiary corporation is engaged in functions that, but for the existence of the subsidiary, the parent would have to undertake.[10] If the subsidiary is engaged in activities that are vital to the survival or the success of the parent corporation, the parent will undoubtedly receive notice of any papers served on the subsidiary. Due process will therefore be fulfilled since the party to the lawsuit will know that it has been sued, and that it must mount a defense or suffer the consequences.

■ The court is also convinced that the parent corporation can truly be said to have "contacts" with a jurisdiction when it has chosen, for its own purposes, to make these contacts through a subsidiary. *See Bellomo v. Pennsylvania Life Co.*, 488 F.Supp. 744, 746 (S.D.N.Y.1980) ("Where, on the other hand, the subsidiaries are created by the parent, for tax or corporate finance purposes, to carry on business on its behalf, there is no basis for distinguishing between the business of the parent and the business of the subsidiaries. There is a presumption, in effect, that the parent is sufficiently involved in the operation of the subsidiaries to become subject to jurisdiction.") (footnote omitted).

■ Put another way, if a parent uses a subsidiary to do what it otherwise would have done itself, it has purposely availed itself of the privilege of doing business in the forum. Jurisdiction over the parent is therefore proper. *See Shaffer v. Heitner*, 433 U.S. 186, 215–16, 97 S.Ct. 2569, 2585–86, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Weight v. Kawasaki Motors Corp., U.S.A.*, 604 F.Supp. 968, 970 (E.D.Va.1985). This contrasts to the case of a holding company. In such a case, the subsidiary is not performing a function that the parent would otherwise have had to perform itself (the holding company could simply hold another type of subsidiary). In such a case, imputing jurisdictional contacts would be improper. *See Savin*, 661 F.Supp. at 471; *Akzona*, 607 F.Supp. at 229, 237.

As it has already been noted, the court will hold a hearing at which time the plain-

---

10. The court's inquiry into whether the subsidiary is simply a substitute for the parent is, in the words of Chief Judge Weinstein, a pragmatic one. *See Bulova Watch Co.*, 508 F.Supp. at 1335. Naturally, a party is free to argue that the factors favored by the second line of cases, such as the overlap between members of the board of the subsidiary and the parent, are some evidence that the subsidiary is engaged in activities that the parent would otherwise perform. It would seem, however, that the most persuasive evidence of such a "proxy" relationship would consist of an analysis of the symbiosis between the corporate functions, combined with proof that, not only does the parent own 100% of the subsidiary, but that the subsidiary does 100% of its business with the parent. In such a case, the subsidiary would appear to be a mere "front" for the parent, established at the behest of accountants or tax experts. *See Akzona*, 607 F.Supp. at 239, citing *Bulova*, 508 F.Supp. at 1343 (where a subsidiary markets the products of the parent, and when the subsidiary has no independent manufacturing capacity, jurisdictional contacts are properly imputed).

tiff may attempt to establish the facts necessary to impute the jurisdictional contacts of Mazda of America to Mazda of Japan. The plaintiff is entitled to expedited discovery before this hearing. *See Mirrow,* 118 F.R.D. at 419; *Allen Organ Co.,* 593 F.Supp. at 108. The plaintiff will therefore be allowed sixty days for discovery limited to the relationship between Mazda of Japan and Mazda of America.[11] At the close of that period, the court will schedule a hearing at which the plaintiff may attempt to prove either that the Irvine, California post office box is that of Mazda of Japan, or that the jurisdictional contacts of Mazda of America should be imputed to Mazda of Japan, and that service on Mazda of Japan has therefore been effectuated through service on Mazda of America.

11. The "ownership" of the Irvine, California post office box shall be included within the scope of this discovery.