UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES R. GRAY,
Plaintiff-Appellant,

v.

No. 95-1741

RISO KAGAKU CORPORATION, RISO,
INCORPORATED,
Defendants-Appellees.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-92-1190)

Argued: January 31, 1996

Decided: April 17, 1996

Before RUSSELL and HAMILTON, Circuit Judges, and BLAKE,
United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** T. English McCutchen, III, MCCUTCHEN, BLANTON,
RHODES & JOHNSON, Columbia, South Carolina, for Appellant.
Milton D. Andrews, THOMPSON & MITCHELL, Washington, D.C.,
for Appellees. **ON BRIEF:** William E. Hopkins, Jr., MCCUTCHEN,
BLANTON, RHODES & JOHNSON, Columbia, South Carolina, for

Appellant. Halpin J. Burke, THOMPSON & MITCHELL, Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Charles R. Gray (Gray) brought this action against Riso Kagaku Corporation (Riso Kagaku) and Riso, Inc. (Riso-USA), alleging causes of action for breach of contract, breach of the South Carolina Unfair Trade Practices Act, conversion, and fraud. The district court dismissed all causes of action against Riso Kagaku for lack of personal jurisdiction and granted summary judgment as to all causes of action in favor of Riso-USA. Gray appeals both the dismissal in favor of Riso Kagaku and the grant of summary judgment in favor of Riso-USA. We affirm.

I.

Riso Kagaku, a Japanese corporation, makes office machines. Riso-USA, a Massachusetts corporation wholly owned by Riso Kagaku, markets Riso Kagaku's office machines in the United States. On June 26, 1987, Riso-USA entered into a written dealer agreement (the Dealer Agreement) with RGI, Inc.,[1] a South Carolina corporation. RGI, Inc. was owned by three individuals. Gray owned 47.5%, Michael Randall owned 47.5%, and Danny Allen owned 5%. Pursuant to the Dealer Agreement, RGI, Inc. became an authorized dealer of certain Riso products.[2]

_____

[1] RGI, Inc.'s name was later changed to "Riso Products of South Carolina, Inc."

[2] Later, Riso-USA also entered into a written dealer agreement with RGI South, Inc. (later known as "Riso Products of Florida, Inc."), a wholly owned subsidiary of RGI, Inc. Hereafter, RGI, Inc. and RGI South, Inc. will be referred to collectively a "RGI."

2

By November 1988, as a result of purchasing inventory from Riso-USA on credit, RGI owed Riso-USA approximately $600,000. In December 1988, Riso-USA sent a memorandum to all dealers stating that finance charges would accrue on delinquent account balances and that Riso-USA would not deliver supplies, parts, and machines to dealers with delinquent account balances until the delinquent account balances were paid off. Accordingly, because RGI's account with Riso-USA was delinquent, Riso-USA refused to deliver supplies, parts, and machines to RGI. The Dealer Agreement authorized Riso-USA to take these actions.

On February 28, 1989, Riso-USA made a proposal to purchase the stock of RGI. On March 1, 1989, Gray responded to the proposal by stating that he would like to make a counter-proposal. The following day, RGI received a fax from Riso-USA, terminating the Dealer Agreement as of March 13, 1989. The Dealer Agreement authorized termination because RGI had a seriously delinquent account with Riso-USA. Riso-USA also informed RGI that Riso-USA would pursue legal action to collect RGI's delinquent account balance. Gray, Randall, and Riso-USA then began negotiating an agreement under which Gray and Randall would sell their stock in RGI to Riso-USA. Both Gray and Randall were represented by counsel during the negotiations.

Gray, Randall, and Riso-USA executed an agreement (the Sale Agreement), dated April 25, 1989, under which Gray and Randall would sell their stock in RGI to Riso-USA for a total of $1.00 each. The Sale Agreement provided, among other things, that: (1) RGI's debt to Riso-USA would be converted to a long-term note; (2) Riso-USA would provide RGI with a general business manager; (3) Gray and Randall would continue as RGI employees, receiving annual salaries of $75,000 plus a percentage of profits; (4) Gray and Randall could be terminated only for cause; and (5) Gray and Randall would have access to all the books and records of RGI. Finally, the Sale Agreement contained a Repurchase Option giving Gray and Randall the option to repurchase all the stock of RGI for $1.00 by May 1, 1992, provided: (1) Gray and Randall repaid their loans from RGI; (2) RGI paid its debts to Riso-USA; (3) RGI had a positive net worth and a positive current assets to current liabilities ratio; (4) the purchaser was employed by RGI at the time of exercising the Repurchase

3

Option; and (5) RGI paid a buy-back premium of approximately $400,000 to Riso-USA. Allen then transferred his 5% of stock in RGI to Riso-USA without consideration. Randall subsequently entered into an agreement with Riso-USA terminating his employment with RGI.

On October 18, 1990, Gray and Riso-USA executed an agreement amending the Sale Agreement (the Amendment). The Amendment extended the period in which Gray could exercise the Repurchase Option to May 1, 1994, and waived the condition that RGI pay the buy-back premium of approximately $400,000 to Riso-USA. On the same day, in consideration for the Amendment, Gray executed a "General Release" releasing "any and all legal and equitable claims he may have against [Riso-USA], or Riso Kagaku Corporation, separately or jointly, arising from any acts or omissions which occurred on or before the date of this General Release." (J.A. 761).

Thereafter, relations soured between Gray and Riso-USA and the protracted litigation culminating in this appeal began. On May 6, 1991, Gray and RGI brought a declaratory judgment action against Riso-USA and Riso Kagaku. And on April 24, 1992, Gray filed his original complaint in this action. He subsequently amended the complaint three times, filing the present version of the complaint on June 28, 1994. The present version of the complaint alleges causes of action against Riso-USA and Riso Kagaku for: (1) breach of contract, (2) breach of contract accompanied by a fraudulent act, (3) breach of the implied covenant of good faith and fair dealing, (4) breach of fiduciary duty, (5) conversion, (6) breach of the South Carolina Unfair Trade Practices Act, (7) fraud, (8) constructive fraud, (9) tortious interference with a business relationship, and (10) intentional interference with a contract. Gray later withdrew with prejudice his declaratory judgment action and his causes of action for tortious interference with a business relationship and intentional interference with a contract. The district court then dismissed Gray's causes of action against Riso Kagaku for lack of personal jurisdiction and granted summary judgment in favor of Riso-USA on Gray's remaining causes of action. This appeal followed.

II.

Gray first argues that the district court erred in dismissing his causes of action against Riso Kagaku for lack of personal jurisdiction.

4

Gray, the party asserting that personal jurisdiction exists, bears the burden of establishing that personal jurisdiction exists. See Mylan Labs., Inc. v. Azko, N.V., 2 F.3d 56, 60 (4th Cir. 1993). To establish personal jurisdiction over Riso Kagaku, Gray must show: (1) that a statute authorizes service of process on Riso Kagaku, and (2) that exercising personal jurisdiction over Riso Kagaku would comport with due process. See id.; see also Fed. R. Civ. P. 4(e).

To make the first showing, Gray relies on the South Carolina long-arm statute, S.C. Code Ann. § 36-2-803. Riso Kagaku concedes that the South Carolina long-arm statute extends to the limits of due process. See Southern Plastics Co. v. Southern Commerce Bank, 423 S.E.2d 128, 130 (S.C. 1992).

Because Riso Kagaku concedes that the South Carolina long-arm statute extends to the limits of due process, Gray must only show that exercising jurisdiction over Riso Kagaku comports with due process. The due process standard has two prongs: (1) the minimum contacts prong and (2) the fairness prong. To satisfy the minimum contacts prong, the defendant must have certain minimum contacts or ties with the forum state. To satisfy the fairness prong, the exercise of personal jurisdiction over the defendant must not "offend traditional notions of fair play and substantial justice." Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 942 (4th Cir. 1994), cert. denied, 115 S. Ct. 1103 (1995).

The minimum contacts prong focuses on whether the defendant "has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state." Id. at 945-46. Gray argues that Riso Kagaku had the requisite minimum contacts with South Carolina because Riso Kagaku's wholly owned subsidiaries marketed Riso Kagaku's products in South Carolina. But the mere fact that Riso Kagaku's subsidiaries do business in South Carolina does not confer personal jurisdiction over Riso Kagaku. See Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 335-38 (1925); Transure, Inc. v. Marsh & McLennan, Inc., 766 F.2d 1297, 1299 (9th Cir. 1985); Yarborough & Co. v. Schoolfield Furniture Indus., Inc., 268 S.E.2d 42, 44 (S.C. 1980); see also Donatelli v. National Hockey League, 893 F.2d 459, 466 (1st Cir. 1990) (requiring more than the

5

sharing of directors or other forms of control inherent in the parent/subsidiary relationship to exercise personal jurisdiction over a parent corporation based on its subsidiary's contacts with the forum state). And the marketing of Riso Kagaku's products in South Carolina does not provide a basis for exercising personal jurisdiction over Riso Kagaku. See Lesnick, 35 F.3d at 944 (rejecting the proposition that personal jurisdiction may be exercised over a manufacturer who merely delivers its products into the stream of commerce with the expectation that the products will be purchased by consumers in the forum state).

Additionally, Gray argues that the district court should have exercised personal jurisdiction over Riso Kagaku by piercing Riso-USA's corporate veil. He points to the following evidence in the record to support this argument: (1) Riso Kagaku funded Riso-USA and gave it infusions of cash and at least part of the purpose of the cash infusions was to gain favorable tax treatment for Riso Kagaku in Japan; (2) at least one board of directors meeting was held in Tokyo; (3) notices of board of directors meetings may have originated in Japan; (4) Riso-USA did not regularly hold formal board of directors meetings, relying instead on informal consultation; (5) a majority of the members of Riso-USA's board of directors were also associated with Riso Kagaku; (6) Riso Kagaku forced Riso-USA to terminate a financing program on which Riso Kagaku acted as guarantor; (7) the president of Riso-USA sought approval from Riso Kagaku officials before hiring a financial controller, although the president believed he had the authority to hire the financial controller without Riso Kagaku's consent; and (8) Riso-USA forwarded certain complaints made by Gray to officials in Japan and received a response on Riso Kagaku letterhead indicating that Riso Kagaku's approval was required for resolving the complaints.

Although these facts demonstrate that Riso-USA failed to observe some corporate formalities, Gray has not sustained his burden of proving that Riso Kagaku has minimum contacts with South Carolina. For example, he has not proved that Riso-USA was an agent of Riso Kagaku, that Riso Kagaku exerts a degree of control greater that what is normally associated with common ownership and directorship, or that Riso-USA is a separate entity in name alone. Donatelli, 893 F.2d at 466. We thus conclude that Gray has not established that Riso

6

Kagaku had sufficient minimum contacts with South Carolina to satisfy the due process standard for the exercise of personal jurisdiction.

We also conclude that Gray cannot satisfy the fairness prong of the due process standard. Under the fairness prong, a court must consider several factors, including the interests of the plaintiff and of the forum state and the burden on the defendant of having to defend the case in the forum state. Id. at 946. When personal jurisdiction over an alien defendant is at issue, a court must also consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by a court in the United States. Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 115 (1987).

Here, consideration of these factors leads to the conclusion that exercising personal jurisdiction over Riso Kagaku would "offend traditional notions of fair play and substantial justice." See Lesnick, 35 F.3d at 942. Although Gray has an interest in adjudicating this action in his home state, South Carolina, and South Carolina has an interest in providing a forum for one of its citizens, these interests are outweighed by the burden on Riso Kagaku in having to defend this action in South Carolina. The distance between Japan and South Carolina makes travel here expensive. Additionally, Riso Kagaku would be at a disadvantage in South Carolina because of language and cultural barriers. See Asahi, 480 U.S. at 115 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). The Supreme Court has admonished courts to demonstrate "an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." Id. Accordingly, we hold that exercising personal jurisdiction over Riso Kagaku would violate the fairness prong of the due process standard.

III.

Having determined that the district court properly dismissed the causes of action against Riso Kagaku, we now consider the propriety of the district court's grant of summary judgment in favor of Riso-USA. We review the grant of summary judgment de novo. See Cooke

7

v. Manufactured Homes, Inc., 998 F.2d 1256, 1260 (4th Cir. 1993). Summary judgment must be entered against a party who, "after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Fed. R. Civ. P. 56(c). The nonmoving party must demonstrate that specific, material facts exist that give rise to a genuine issue. See Celotex Corp., 477 U.S. at 324. "The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Furthermore, the existence of a scintilla of evidence in support of the nonmoving party's position is insufficient. There must be evidence on which the jury could reasonably find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A.

Before we address each of Gray's causes of action against Riso-USA, we note at the outset that some of Gray's claims are barred by the General Release. The General Release executed by Gray on October 18, 1990, states, "Charles Gray hereby releases any and all legal and equitable claims he may have against [Riso-USA], or Riso Kagaku Corporation, separately or jointly, arising from any acts or omissions which occurred on or before the date of this General Release." (J.A. 761). The plain language of the General Release precludes Gray from recovering from Riso-USA for any wrong committed by Riso-USA on or before October 18, 1990. See Jordan v. Security Group, Inc., 428 S.E.2d 705, 707 (S.C. 1993) ("Where the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect.").[3] Although Gray contends that the General Release was only intended to release certain specific claims, the language of the General Release does not admit of such limitation.[4] It is therefore our duty to "enforce

_____

[3] There is no dispute that South Carolina law applies to this case.
[4] Gray also argues that the General Release was not fairly obtained. He relies on a memorandum written by the president of Riso-USA three months before the General Release was executed, stating that Gray was

8

the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." Id. Thus, to the extent that Gray's claims against Riso-USA are based on conduct that occurred on or before October 18, 1990, summary judgment was properly granted on those claims.

B.

Gray asserts that Riso-USA breached the Sale Agreement and the Amendment in the following particulars: (1) failing to provide RGI with a general business manager; (2) failing to allow Gray to repurchase the stock in RGI; (3) failing to make available to RGI a special type of financing that was available to all other dealers; and (4) failing to give RGI the special pricing reserved for Riso-only dealers. We shall address these arguments in turn.

1.

Gray argues that Riso-USA breached Paragraph 5(b) of the Sale Agreement, which states that Riso-USA "will provide RGI with a general business manager who will act as chief executive officer and chief financial officer regardless of whether such person carries either or both of those titles." (J.A. 724). Although the Sale Agreement was executed on May 11, 1989, Riso-USA did not appoint a general business manager for RGI until June 1991.

In South Carolina, no cause of action for breach of contract arises unless the breach caused damage to the plaintiff. Baughman v. Southern Ry., 121 S.E. 356, 356 (S.C. 1924). Here, Gray has failed to demonstrate that Riso-USA's delay in appointing a general business manager caused him any injury. See Celotex Corp. , 477 U.S. at 324 (holding that summary judgment is appropriate against a party who,

_____

concerned that he would be unable to exercise the Repurchase Option within the time provided for its exercise in the Sale Agreement. At most, this memorandum provides evidence of Gray's motivation for executing the General Release, i.e., to obtain an extension of time to exercise the Repurchase Option. By no means does it show that the General Release was not fairly obtained.

9

"after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Indeed, the record demonstrates that Gray was not injured by Riso-USA's delay in appointing a general business manager. Before the appointment of the general business manager, Riso-USA officials performed the functions that a general business manager would perform. The president of Riso-USA told Gray that Riso-USA was having difficulty hiring a general business manager, that the salary for a general business manager was an expense that RGI could ill afford, and that, therefore, the president of Riso-USA would act as "de facto" general business manager. Gray admits that this arrangement "was fine with" him. (J.A. 1105). Summary judgment in favor of Riso-USA was appropriate on this breach of contract claim because Gray failed to establish the existence of injury resulting from the breach.

2.

Gray also argues that Riso-USA breached Paragraph 6 of the Sale Agreement (the Repurchase Option), which gives Gray an option to repurchase RGI if, among other things, "[a]ll RGI debts, long term or current, to Riso[-USA] shall have been paid in full" and "RGI shall have a positive net worth and a positive current assets to current liabilities ratio." (J.A. 726). Gray argues that Riso-USA prevented him from exercising this Repurchase Option.

To support his argument that Riso-USA prevented him from exercising the Repurchase Option, Gray relies on a series of letters between his attorney and Riso-USA's attorney. Examination of these letters does not show that Riso-USA prevented Gray's exercise of the Repurchase Option. Rather, the letters show that the parties were attempting to settle the ongoing litigation between the parties and to determine the amount due under the Repurchase Option. In determining the amount due under the Repurchase Option, each party sought offsets and credits for various expenses for which they claimed the other party was responsible. The offsets and credits sought by each party were not specifically authorized in the Sale Agreement or in the Amendment, and neither party would agree to the offsets and credits sought by the other party. Consequently, the parties failed to reach an

10

agreement. Because an examination of these letters reveals no genuine issue regarding Gray's allegation that Riso-USA prevented his exercise of the Repurchase Option, summary judgment in favor of Riso-USA was appropriate on this breach of contract claim.

3.

Gray argues that Riso-USA breached Paragraph 5(a) of the Sale Agreement, which states that RGI's debts to Riso-USA will be "on standard terms as stated by Riso[-USA] for all dealers." (J.A. 724). Gray claims that Riso-USA refused to allow RGI to purchase its inventory under a particular financing plan, the "ORIX" plan. However, Riso-USA terminated the ORIX plan as to all dealers, including RGI, in the summer of 1990. Gray does not claim that Riso-USA refused to allow RGI to purchase its inventory under the ORIX plan before it terminated the plan as to all dealers. Because no dealer could use the ORIX plan, Riso-USA's failure to allow RGI to use the ORIX plan did not breach the Sale Agreement's requirement that RGI's debts to Riso-USA would be on standard terms applicable to all dealers. Therefore, summary judgment in favor of Riso-USA was appropriate regarding this breach of contract claim.

4.

Finally, Gray also argues that for a period of time preceding the execution of the General Release, Riso-USA breached Paragraph 5(a) of the Sale Agreement by failing to give RGI special "Riso-only" pricing that is given to all dealers who sell Riso products exclusively. Because the acts or omissions from which this claim arises occurred before October 18, 1990, Gray has completely released Riso-USA for liability resulting from this breach of the Sale Agreement. Therefore, summary judgment in favor of Riso-USA was appropriate on this breach of contract claim.

C.

Gray claims that each of the alleged breaches of contract just discussed were accompanied by fraudulent acts. In South Carolina, the cause of action for breach of contract accompanied by a fraudulent act

11

has three elements: (1) a breach of contract, (2) fraudulent intent relating to the breaching of the contract and not merely to its making, and (3) a fraudulent act accompanying the breach. Floyd v. Country Squire Mobile Homes, Inc., 336 S.E.2d 502, 503-04 (S.C. Ct. App. 1985).

Gray has waived his argument that Riso-USA's delay in appointing a general business manager was a breach of contract accompanied by a fraudulent act. At the summary judgment hearing, Gray's attorney stated, "As far as fraudulent act accompanying failure to appoint a business manager, I would not necessarily say that there was one on that." (J.A. 633). Therefore, we will not consider this argument. See Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) ("[I]ssues raised for the first time on appeal generally will not be considered.").

As already noted, Riso-USA's alleged prevention of Gray's exercise of the Repurchase Option and Riso-USA's failure to allow RGI to use the ORIX plan do not constitute breaches of the Sale Agreement or the Amendment. Consequently, as to these claims, Gray cannot establish the first element of the cause of action for breach of contract accompanied by a fraudulent act. And, as discussed above, Gray has released Riso-USA from liability for its failure to give RGI Riso-only pricing. Therefore, summary judgment in favor of Riso-USA was appropriate on Gray's cause of action for breach of contract accompanied by a fraudulent act.

D.

Gray claims that Riso-USA violated the covenants of good faith and fair dealing in the contracts at issue in this case. In South Carolina, every contract has an implied covenant of good faith and fair dealing. Commercial Credit Corp. v. Nelson Motors, Inc., 147 S.E.2d 481, 484 (S.C. 1966). This covenant requires the parties to do those things that according to reason and justice they should do to carry out the purpose of the contract. Id.

Gray alleges the following breaches of the implied covenant of good faith and fair dealing: (1) Riso-USA frustrated and sabotaged Gray's exercise of the Repurchase Option; (2) Riso-USA refused to treat RGI on the same credit terms as other dealers; (3) the president

12

of Riso-USA told Gray that the Sale Agreement and the Amendment were void; (4) Riso-USA threatened to pursue legal action to collect funds owed by RGI; (5) Riso-USA placed RGI on credit hold until Gray acceded to the Sale Agreement; (6) Riso-USA pressured Gray into purchasing large amounts of unneeded inventory for RGI; (7) Riso-USA threatened to terminate RGI as a Riso dealership; and (8) Riso-USA refused to ship supplies necessary to fill an order that RGI had from a customer.

The first alleged breach--Riso-USA's frustrating and sabotaging Gray's exercise of the Repurchase Option--refers to the same conduct that Gray alleges breached the express terms of the Repurchase Option, as well as to other generalized allegations of Riso-USA's mismanagement while it controlled RGI. As discussed above, Gray cannot point to specific facts in the record supporting these allegations. Therefore, the district court properly granted summary judgment on this claim. See Celotex Corp., 477 U.S. at 324.

The second alleged breach--Riso-USA's refusal to treat RGI on the same credit terms as other dealers--presumably refers to the same conduct that Gray alleges breached Paragraph 5(a) of the Sale Agreement. As discussed above, Riso-USA did not violate Paragraph 5(a) by refusing to allow RGI to use ORIX financing because Riso-USA refused to allow all dealers to use ORIX financing. And Gray released Riso-USA from liability for its failure to give RGI Riso-only pricing.

The third alleged breach--the president of Riso-USA telling Gray that the Sale Agreement and the Amendment were void--is immaterial. Riso-USA has not refused to perform under the Sale Agreement and Amendment. Therefore, even if the president of Riso-USA did tell Gray that the Sale Agreement and the Amendment were void, Gray cannot demonstrate that he was injured by this statement. Cf. Baughman, 121 S.E. at 356 (holding that no cause of action for breach of contract arises unless the breach causes damage to the plaintiff).

The remaining alleged breaches refer to the implied covenant of good faith and fair dealing in the Dealer Agreement between Riso-USA and RGI. An action on a contract must be brought by the parties to the contract or their assignees. See Professional Bankers Corp. v.

13

Floyd, 331 S.E.2d 362, 364-65 (S.C. Ct. App. 1985). Because Gray was not a party to the Dealer Agreement or an assignee of a party to the Dealer Agreement, Gray is not the proper party to raise these claims. Therefore, summary judgment in favor of Riso-USA was appropriate of these claims.

E.

Gray asserts that by virtue of the Sale Agreement, specifically the Repurchase Option, a fiduciary relationship existed between Riso-USA and Gray. Gray further asserts that Riso-USA breached its fiduciary duty to him by mismanaging RGI and by preventing him from exercising the Repurchase Option.

In South Carolina, those who control a corporation owe a fiduciary duty to the shareholders of the corporation. Jacobson v. Yaschik, 155 S.E.2d 601, 605 (S.C. 1967); see Hite v. Thomas & Howard Co., 409 S.E.2d 340, 342 (S.C. 1991), overruled in part on other grounds, Huntley v. Young, 462 S.E.2d 860 (S.C. 1995). Although Gray is not a shareholder of RGI, he attempts to extend the fiduciary duty recognized in Jacobson by noting that Riso-USA, as the sole shareholder of RGI, controlled RGI and that the Repurchase Option gave him an option to become a shareholder by repurchasing all the shares in the corporation. Gray points out that his ability to exercise the Repurchase Option was dependent in part on how Riso-USA managed RGI because the amount necessary to repurchase the stock was based on RGI's assets to liabilities ratio.

We agree with Gray that the Sale Agreement implicitly prohibits Riso-USA from thwarting Gray's exercise of the Repurchase Option by intentionally inflating the cost to Gray of exercising the Repurchase Option. But we are not convinced this prohibition exists because the Sale Agreement created a fiduciary relationship. Cf. Taylor v. First Union Corp., 857 F.2d 240, 246 (4th Cir. 1988) (citing Jacobson and noting that "[t]he fiduciary obligation established by South Carolina law is quite specific" and that"the extent of the fiduciary obligation is . . . settled"), cert. denied, 489 U.S. 1080 (1989). Gray's argument confuses the implied covenant of good faith and fair dealing with fiduciary duty. See Columbia East Assocs. v. Bi-Lo, Inc., 386 S.E.2d 259, 262 (S.C. Ct. App. 1989) ("[T]he law will imply an

14

agreement to do those things that according to reason and justice should be done to carry out the purpose for which the contract was made."); Black's Law Dictionary 432 (abridged 6th ed. 1991) (defining "fiduciary duty" as "the highest standard of duty implied by law"). But regardless of whether Riso-USA had a fiduciary duty or simply a duty to act fairly and in good faith, there is simply no evidence beyond Gray's bald assertions that Riso-USA managed RGI in such a way as to inflate the cost of exercising the Repurchase Option. Therefore, summary judgment was appropriate on Gray's cause of action for breach of fiduciary duty. See Celotex Corp., 477 U.S. at 324.

F.

Gray asserts that Riso-USA wrongfully refused to allow him to repurchase the stock in RGI and that Riso-USA's resulting wrongful detention of the stock constitutes conversion.

The tort of conversion is the illegal use, misuse, or detention of another's chattel to the exclusion of the owner's rights. Hite, 409 S.E.2d at 342. To establish conversion, including conversion of stock, the plaintiff must establish title or right to possession of the chattel. Crane v. Citicorp Nat'l Servs., Inc., 437 S.E.2d 50, 52 (S.C. 1993); see Daniel v. Post, 187 S.E. 915, 917-18 (S.C. 1936). An action for conversion of stock has been allowed in cases where either the stock certificate or payment of the stock's value has been wrongfully retained by another. Hite, 409 S.E.2d at 342.

Here, however, Riso-USA unquestionably had title and right to possess the stock by virtue of the Sale Agreement. Riso-USA did not wrongfully retain the stock, because the parties never reached an agreement on the amount Gray had to pay to repurchase the stock and Gray never tendered payment for the stock. Therefore, summary judgment in favor of Riso-USA was appropriate on Gray's conversion cause of action.

G.

Finally, Gray asserts a cause of action against Riso-USA for breach of the South Carolina Unfair Trade Practices Act (SCUTPA).

15

SCUTPA allows "[a]ny person who suffers any ascertainable loss of money or property . . . as a result of the use or employment . . . of an unfair or deceptive method, act or practice" in the conduct of any trade or commerce to sue for actual damages. S.C. Code Ann. § 39-5-140(a). A trade practice is "unfair" when it is offensive to public policy or when it is immoral, unethical, or oppressive. Adams v. G.J. Creel & Sons, Inc., 465 S.E.2d 84, 86 (S.C. 1995). A trade practice is "deceptive" when it has a tendency to deceive. Id. To be actionable under SCUTPA, an unfair or deceptive practice must have an adverse effect on the public interest. Florence Paper Co. v. Orphan, 379 S.E.2d 289, 291 (S.C. 1989). Such a practice has an effect on the public interest if the practice has the potential for repetition. Noack Enters. v. Country Corner Interiors, Inc., 351 S.E.2d 347, 350-51 (S.C. Ct. App. 1986).

Gray argues that every alleged instance of misconduct on the part of Riso-USA constitutes an unfair or deceptive act under SCUTPA. To the extent the alleged misconduct relates to harm to RGI, Gray does not have standing to assert that misconduct in his SCUTPA cause of action. See S.C. Code Ann. § 39-5-140(a) (allowing "[a]ny person who suffers any ascertainable loss of money or property" to bring a SCUTPA claim). And, to the extent the misconduct occurred on or before October 18, 1990, Gray has released Riso-USA from liability for the misconduct.

The remaining allegations of misconduct relate to Riso-USA's preventing Gray from exercising the Repurchase Option. Gray has failed to demonstrate a potential for repetition of this alleged misconduct. The only evidence in the record regarding the potential for Riso-USA to acquire the stock of other dealers and to prevent the dealers from repurchasing the stock indicates that Riso-USA has never acquired stock in another Riso dealership, has no plans to acquire all or part of the stock of another dealership, and has no plans to give any employee or other person an option to buy any ownership interest in Riso-USA or any Riso-USA subsidiary. Thus, there is no potential for repetition of Riso-USA's alleged misconduct of preventing Gray from exercising the Repurchase Option. Summary judgment in favor of

16

Riso-USA was therefore appropriate on Gray's cause of action for breach of SCUTPA.**5**

IV.

For the reasons stated herein, we affirm the district court's dismissal of Gray's causes of action against Riso Kagaku and the district court's entry of summary judgment in favor of Riso-USA.

<u>AFFIRMED</u>

_____

**5** Gray also asserts causes of action for fraud and constructive fraud against Riso-USA, alleging that Riso-USA misrepresented certain facts and failed to disclose other facts. Our review of the record and Gray's arguments discloses that these causes of action are without merit. Therefore, summary judgment in favor of Riso-USA was appropriate on Gray's causes of action for fraud and constructive fraud.

17