**MODESTO CITY SCHOOLS, et al., Plaintiffs,**

**v.**

**RISO KAGAKU CORPORATION, et al., Defendants.**

**No. Civ. S99–2214 FCD/GGH.**

United States District Court, E.D. California.

Aug. 1, 2001.

wrongdoing described in the copyright, breach of confidence and fraud claims.

William A. Kershaw, Michael A. Grob, James J. Banks, Mark J. Tamblyn, Kronich, Moskovitz, Tiedemann & Giragr, Sacramento, CA, James Ulwick, Kramon & Graham, Baltimore, MD, Harvey G. Sanders, Jr., James T. Hewitt, Leatherwood, Walker, Todd & Mann, Greenville, SC, for Plaintiffs.

Milton D. Andrews, Edwin G. Harvey, Steven M. Sherman, Thompson Coburn, Washington, DC, Richard M. Clinton, Dorsey & Whitney, LLP, Seattle, WA, Eugene C. Gratz, Laguna Beach, CA, for Defendants.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiffs Modesto City Schools and Stockton Unified School District bring this action against defendants Riso Kagaku Corporation ("RKC"), its wholly-owned subsidiary Riso, Inc., and certain of Riso, Inc.'s dealers, alleging that defendants violated federal antitrust laws and the Massachusetts Protection Act. This matter is before the court on RKC's motion to dismiss the complaint for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), or alternatively, for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

## PROCEDURAL BACKGROUND

This motion was originally noticed for April 28, 2000. On July 25, 2000, this court denied the motion without prejudice, finding that "plaintiffs have shown a colorable basis for jurisdiction and that additional discovery may assist the court in determining whether it may exercise personal jurisdiction over RKC." Accordingly, the court granted plaintiffs 90 days to conduct jurisdictional discovery. Mem. & Ord., filed Jul. 25, 2000. On October 24,

2000, the court granted plaintiffs an additional 45 days to conduct such discovery. Ord., filed Oct. 24, 2000.

Thereafter, RKC re-noticed its motion for March 16, 2001, and the parties re-briefed the issues. RKC's brief focused on plaintiffs' alleged inability to make a prima facie showing that Riso, Inc. was the alter ego of RKC. Plaintiffs urged this court to apply a less stringent standard set forth in *Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc.,* 671 F.Supp. 1525 (C.D.Cal.1987). Neither party directly addressed the general agency theory of personal jurisdiction. On April 13, 2001, this court issued an order which provided in pertinent part:

> This court has reviewed the cases cited by the parties as well as other Ninth Circuit authority bearing on this issue and finds that it may exercise personal jurisdiction over RKC based on the presence of Riso, Inc. if plaintiffs make a prima facie showing that: (1) Riso, Inc. is the alter ego of RKC, *or* (2) Riso, Inc. is the "general agent" of RKC.

Ord., filed Apr. 13, 2001. The court also found that plaintiffs had failed to make a prima facie showing that Riso, Inc. was the alter ego of RKC and that additional briefing was necessary to determine whether Riso, Inc. was the general agent of RKC. *Id.*[1]

The court has reviewed the extensive briefing submitted by the parties in connection with RKC's motion to dismiss and has given careful consideration to the arguments presented during oral argument. For the reasons set forth below, RKC's motion to dismiss for lack of personal jurisdiction, or alternatively, for failure to state a claim upon which relief can be granted is denied.

---

1. The court also declined to apply an alternative jurisdictional test set forth in *Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc.,* 671 F.Supp. 1525 (C.D.Cal. 1987).

## JURISDICTIONAL FACTS

Defendant RKC is a Japanese corporation headquartered in Tokyo, Japan. RKC manufactures digital duplicators known as Risographs, as well as spare parts, inks and masters for use therein. RKC manufactures these products in Japan. RKC does not advertise or sell these products in the United States. RKC does not have an office in the United States.

Riso, Inc. is RKC's wholly-owned subsidiary. Riso, Inc. is headquartered in Danvers, Massachussets. RKC founded Riso, Inc. in 1986 for the express purpose of selling, distributing and promoting Risographs and Risograph supplies in the Western Hemisphere. RKC sells and markets its products in the United States exclusively through Riso, Inc. and Riso, Inc.'s dealers. In 1999, RKC's sales to Riso, Inc. were nearly $136 million and represented 19% of RKC's sales worldwide.[2] During the relevant time period (1994–1999), two of Riso, Inc.s' four directors were RKC executives, and one of those executives was a director at RKC. During this same period, Riso, Inc. provided sales reports to RKC on a daily basis and operational, executive, inventory, and financial reports to RKC on a regular basis. Moreover, Riso, Inc. presented its budgets to RKC for approval, and RKC presented Riso, Inc. with target sales quotas and projected profits for Riso, Inc.

Plaintiffs and the class they purport to represent are end-users of RKC's products. More specifically, they own, lease and/or operate Risographs. Plaintiffs contend they were damaged by defendants' anti-competitive conduct in that they were forced to pay supracompetitive prices for Riso products, service and maintenance.

## ANALYSIS

### 1. Motion To Dismiss For Lack Of Personal Jurisdiction

 Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may seek dismissal of an action brought against him on the basis that personal jurisdiction over him is lacking. Once a defendant challenges jurisdiction, the burden of proof to show that jurisdiction is appropriate lies with the plaintiff. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). When a defendant's motion to dismiss for lack of personal jurisdiction is decided on pleadings, affidavits and discovery materials, the plaintiff need only make a prima facie showing sufficient to support a finding of personal jurisdiction in order for the action to proceed. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995). "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Id.*

 Section 12 of the Clayton Act, 15 U.S.C. § 22, authorizes worldwide service of process on an antitrust defendant so long as venue is established under either section 12 or the general venue statute, 28 U.S.C. § 1391. Accordingly, personal jurisdiction is proper in any district so long as plaintiffs can show that RKC had sufficient contacts with the United States and maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Go–Video, Inc. v. Akai Electric*, 885 F.2d 1406, 1413–15 (9th Cir.1989).

 A court may exercise either general or specific jurisdiction over a nonresident defendant. *Sher*, 911 F.2d at 1361 (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404

---

**2.** Between 1994 and 2000, RKC's sales to Riso, Inc. ranged from $101 to $138 million and represented between 13% and 19% of RKC's sales worldwide.

(1984)). General jurisdiction exists where the defendant has "substantial" or "continuous and systematic" contacts with the forum even where those contacts are unrelated to the causes of action alleged. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1287 (9th Cir.1977). The relevant forum in an antitrust case such as this is the United States.

Plaintiffs do not argue that RKC itself had substantial or continuous and systematic contacts with the United States during the relevant time period. Rather, plaintiffs contend that RKC's wholly-owned subsidiary, Riso, Inc., had such contacts, and that those contacts are properly imputed to RKC for purposes of establishing jurisdiction over RKC.

It is well established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes. *Doe v. Unocal,* 248 F.3d 915, 925 (9th Cir.2001). It is equally well established, however, that a subsidiary's contacts may be imputed to the parent where the subsidiary is the parent's alter ego or general agent. *Id.* at 928–30; *Chan v. Soc'y Expeditions, Inc.,* 39 F.3d 1398, 1405–06 (9th Cir.1994); *Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1177–78 (9th Cir.1980); *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 422–24 (9th Cir.1977). This court has already determined that plaintiffs failed to make a prima facie showing that Riso, Inc. was RKC's alter ego. *See* Ord., filed Apr. 13, 2001. Accordingly, the question before this court is whether plaintiffs have made a prima facie showing that Riso, Inc. was RKC's general agent for jurisdictional purposes. The Ninth Circuit recently articulated the following test for general agency:

> The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services."

*Unocal,* 248 F.3d at 928 (quoting *Chan,* 39 F.3d at 1405) (quoting *Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116, 121 (2d Cir.1967)). "Consequently, '[t]he question to ask is ... whether in the truest sense, the subsidiaries' presence substitutes for the presence of the parent.'" *Unocal,* 248 F.3d at 928–29 (quoting *Gallagher v. Mazda Motor of America, Inc.,* 781 F.Supp. 1079, 1083–84 (E.D.Pa.1992)) (quoting *Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd.,* 508 F.Supp. 1322, 1342 (E.D.N.Y. 1981)).

In *Unocal,* the court found jurisdiction lacking where the plaintiffs failed to make a prima facie showing that the foreign corporation's operational subsidiaries in California were its agents for purposes of personal jurisdiction where there was "no evidence that in the absence of [the foreign corporation's] California subsidiaries involved in petrochemical and chemical operations, [the foreign corporation] would conduct and control those operations." *Id.* at 929. The court also found that plaintiffs failed to make out a prima facie case that the foreign corporation's holding company subsidiaries were its general agents for jurisdictional purposes where neither performed any services or activities for the foreign corporations; but rather, merely held assets. *Id.* at 929–30.

Unlike the operational subsidiaries in *Unocal,* Riso, Inc. is a sales and marketing subsidiary. Indeed, Riso, Inc. is RKC's sole means of selling and marketing its products in the United States—a market which accounts for approximately one-fifth of RKC's sales worldwide. Riso, Inc. markets and sells RKC's products through a network of exclusive Riso dealers. More-

over, unlike the holding company subsidiaries at issue in *Unocal,* Riso, Inc. does not merely hold assets for RKC. Indeed, it serves as RKC's sole sales and marketing conduit in the United States, a vitally important market.

■ RKC argues that, in addition to establishing that Riso, Inc. functioned as RKC's representative in the United States by performing services that were "sufficiently important" to RKC, plaintiffs must show that RKC exercised day-to-day control over Riso, Inc.'s operations. According to RKC, "[t]aken literally, [the general agency test quoted above] would result in jurisdiction in every instance," contravening the general rule that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent.[3] RKC's assertion is not wholly unfounded, but after careful consideration, the court finds that it does not comport with controlling Ninth Circuit authority.

RKC contends that both *Kramer* and *Unocal* require a showing of day-to-day control in order to meet the general agency test. Read in isolation, certain phrases suggest that such may be the case; however, read in context and in relation to other Ninth Circuit decisions, the court finds that day-to-day control is not an element of the general agency test in the Ninth Circuit. *Kramer* begins its analysis by recognizing that a parent can be "present" for jurisdictional purposes through an "agent" or "alter ego." At no point thereafter does the court distinguish between these two possible bases of personal jurisdiction. Rather, it analyzes them together, and in doing so, mentions control as a factor. Read literally, the decision suggests that courts should analyze the same factors in determining whether jurisdiction exists under either an alter ego or general

agency theory. As discussed below, recent Ninth Circuit case law establishes that these are two separate inquiries. *See Unocal,* 248 F.3d at 925–30; *Chan,* 39 F.3d at 1405–06.

RKC places great weight on the Ninth Circuit's statement in *Unocal* that "[a]n alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations." 248 F.3d at 926 (citing *Kramer,* 628 F.2d at 1177). The court made that statement in the introduction to a section entitled "Attributing Contacts of Subsidiaries to the Parent Corporation." Read in isolation that statement supports RKC's assertion that day-to-day control is required to satisfy the general agency test. However, the relevant section includes two subsections entitled "Alter Ego" and "Agency." In the "Alter Ego" subsection, the court explains that in order to satisfy the alter ego exception to the general rule that a subsidiary and a parent are separate entities, a plaintiff must show that "the parent controls the subsidiary 'to such a degree as to render the latter the mere instrumentality of the former.'" *Id.* at 926 (quoting *Calvert v. Huckins,* 875 F.Supp. 674, 678 (E.D.Cal. 1995)). In finding that the plaintiffs failed to make a prima facie showing, the court notes that "[p]laintiffs present no evidence that [the foreign corporation] is involved in the day-to-day operations of its subsidiaries." *Id.* at 927.

In contrast, the subsection entitled "Agency" focuses on the subsidiaries' functions and their importance to the foreign corporation. The court states that "[t]he agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did

---

**3.** When asked by the court to distinguish the alter ego and general agency tests, counsel for RKC stated that the only difference between the two is the alter test requires a showing of undercapitalization.

not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.' " *Id.* at 928 (quoting *Chan,* 39 F.3d at 1405) (quoting *Gelfand,* 385 F.2d at 121). Toward the end of the "Agency" section, the court addresses the plaintiffs' argument that "[b]y maintaining control of the operating companies through its subsidiary holding companies, ... the subsidiary companies should be treated as [the foreign corporation's] general agents in California...." *Unocal,* 248 F.3d at 929. In refuting that argument, the court states, "[a]s noted above, [ ] the record does not support plaintiffs' contention that [the foreign corporation] directly controls the day-to-day activities of the California operating or holding companies. The fact that [the foreign corporation] may indirectly control or supervise its subsidiaries, does not lead the Court to a different conclusion." *Id.* Thus, while the "Agency" subsection mentions day-to-day control, it does so only in response to the plaintiffs' argument that the parent directly controlled the subsidiaries. In doing so, the court did not, as RKC suggests, hold that a showing of day-to-day control is required in order to satisfy the general agency test. Tellingly, at the close of that subsection, when referring to "the agency doctrine adopted by the Ninth Circuit," the court cites to its decisions in *Wells Fargo* and *Chan. Id.* at 931. *Kramer* is not mentioned. Moreover, day-to-day control is not mentioned in *Chan,* the case cited by *Unocal* as articulating the agency test for jurisdictional purposes. Having considered the decision as a whole and in the context of the Ninth Circuit's other decisions discussing general agency jurisdiction, this court finds that *Unocal* does not

require plaintiffs show that RKC exercised day-to-day control over Riso, Inc. in order to satisfy the agency test for jurisdictional purposes.

In so holding this court does not suggest that control is wholly irrelevant to the general agency test. Rather, the court finds that it is not the *sine qua non* of the general agency test. As Chief Judge Weinstein explained in his scholarly discussion of the subject in *Bulova Watch Co.:*

[D]ifferent control relationships inhere in different multinational structures, and we lose sight of the economic realities if we insist on masking these distinctions behind simplistic formulae. The kind of "day-to-day control", to the extent such a nebulous concept can be made concrete, will vary depending on the kind of subsidiary involved. Thus, while "day-to-day control" might be required to attribute the activities of a relatively autonomous manufacturing subsidiary to its conglomerate parent, this by no means implies such a requirement as to a wholly-owned sales and marketing subsidiary which is the conduit for the sales of a single product in the New York market.

The common law requirements of a "general agency" demand that such substantial activities be carried on for the benefit of the principal that, in some cases, those same activities may indeed be sufficient to render the principal himself "present" under the "continuous and systematic" test....

508 F.Supp. at 1343.

■ Finally, contrary to RKC's assertion, the general agency test, as applied by this court, is not without limits.[4] A

---

4. Nor is the court persuaded by plaintiffs' suggestion that the general agency test's only limit in cases involving a parent and its wholly-owned subsidiary is that the test does not

apply to holding company subsidiaries that merely hold assets for their parents. While the general agency test does not apply in such

general agent is not merely an entity that performs *some* function that benefits its parent; rather, it must perform a *significant* function—one that is essential to the parents' business. That limitation is illustrated by the cases discussing and applying the general agency test. For example, in *Chan*, the court intimated that the following facts would be relevant to determining whether a resident company served as the general agent for a non-resident company: (1) what percentage of the non-resident company's business came from the resident company; (2) whether the resident company was the non-resident's only agent in the forum; and (3) whether the non-resident conducted any marketing activities in the forum. 39 F.3d at 1406. Likewise, in *Bulova Watch Co.*, the court considered the following factors in determining whether American subsidiaries were general agents of their Japanese parent: (1) interchange of personnel between the parent and the subsidiaries; (2) overlapping directors and officers; (3) the percentage of the parent's production that moved through its subsidiaries; (4) the significance of the subsidiaries in the parent's "organizational life;" (5) the subsidiaries' marketing of the parents' products; (6) the extent to which the parent was informed of activities undertaken by its subsidiaries; and (7) the relationship between the cause of action alleged to the subsidiaries' activities on behalf of the parent.[5]

Each of the above-mentioned factors counsel in favor of jurisdiction in this case. Riso, Inc. is RKC's sole conduit for marketing and selling its products in the United States. Riso, Inc.'s product line is comprised solely of RKC's products. Nearly

20% of RKC's production moves through Riso, Inc. Thus, the United States' market and Riso, Inc.'s role in servicing it is crucial to RKC's organizational life. Moreover, during the relevant time period, two of Riso, Inc.'s board members were RKC executives, and one of those executives was a member of RKC's board. Furthermore, Riso, Inc. regularly informed RKC of its marketing, sales and related activities. Finally, the antitrust violations alleged in plaintiffs' complaint are directly related to Riso, Inc.'s marketing and sales of RKC's products in the United States.

■■■ This court may look beyond RKC's and Riso, Inc.'s formal separateness in determining whether Riso, Inc. acted as RKC's general agent. *Chan*, 39 F.3d at 1405 n. 9. As the court observed in *Bulova Watch Co.*, the court must make "a common sense appraisal of economic relationships . . . [and] examine a business relationship from the practical viewpoint of businessmen rather than through the distorting lens of a legal conceptual framework established in an earlier era." 508 F.Supp. at 1327. *Bulova* is factually analogous to the instant action. That case involved a Japanese parent, K. Hattori & Co., its American subsidiary, Seiko Corporation of America ("SCA"), a New York corporation, and its American sub-subsidiaries, Seiko Time Corp., Pulsar Time, Inc. and SPD Precision, Inc., also New York corporations. *Id.* at 1329. Watch and clock sales accounted for 90 percent of Hattori's sales, and the United States was its largest export market. Hattori manufactured its watches in Japan, and sold them to its American sub-subsidiaries for distribution in the United States. In find-

cases, as discussed below, there are additional limits.

**5.** The court in *Gallagher* similarly identified the following factors: overlap between board

members; symbiosis between corporate functions; 100% ownership of the subsidiary by the parent; and the fact that the subsidiary does 100% of its business with the parent. 781 F.Supp. at 1085 n. 10.

ing that Hattori's subsidiaries were its general agents, the court observed:

> Hattori is a highly effective export manufacturer and not a fully developed multinational.... Large and sophisticated as it may be, it is very much the hub of a wheel with many spokes. It is appropriate, therefore, to look to the center of the wheel in Japan when the spokes violate substantive rights in other countries.

*Id.* at 1341.

As in *Bulova*, Riso, Inc.'s sole function at all the relevant times herein was to market and sell RKC's products in the United States and elsewhere. Accordingly, Riso, Inc. provided a vital service to RKC.

■■■ RKC argues that even if day-to-day control is not required, it is still not subject to this court's general jurisdiction because, in the absence of Riso, Inc., it would not undertake to perform Riso, Inc.'s activities in the United States. Rather, RKC asserts that it would hire third-party distributors to sell and market its products in the United States as it has done in other markets. This assertion is not pure speculation. According to Nobunari Kuroiwa, RKC's Executive Managing Director & General Manager, Overseas Sales, RKC sells directly to end-users only in Japan. Kuroiwa Decl. ¶ 4. RKC's practice, in countries where it has no subsidiary, is to sell its products through third-

party distributors. *Id.* ¶ 9. Indeed, this is RKC's practice in all Asian counties, and the Oceanic countries of Australia and New Zealand. *Id.* ¶ 10.[6] Kuriowa also notes that from 1968 to 1973, RKC's products were sold through 3M in the United States. *Id.* ¶ 13.

While RKC has submitted ample evidence that it does in fact sell through third-party distributors in other countries, the court is not convinced that it would do so in the United States in the absence of Riso, Inc. The record does not reflect the importance of the markets in which RKC utilizes distributors. Likewise, while RKC sold its products through a third-party in the United States from 1968–1973, the record does not reflect the importance of the United States' market to RKC at that time. As the court explained in *Bulova:*

> This market is simply too important to the parent's welfare to use independent and uncontrolled sales agents and distributors as it does in some countries where sales are relatively small.

*Bulova*, 508 F.Supp. at 1342. Absent a showing that RKC has sold or marketed its products through third-party distributors in markets comparable in size and importance to the United States market during the years 1994–1999, the court cannot find that RKC would do so now in the absence of Riso, Inc.

Based on the above, the court finds that plaintiffs have made a prima facie showing that Riso, Inc. is RKC's general agent in the United States for purposes of personal jurisdiction.[7]

---

6. RKC sells and markets its products through independent distributors in the following countries: Formosa; India; Indonesia; Iran; Korea; Malaysia; New Zealand; Australia; Pakistan; Philippines; Singapore; Sri Lanka; and Vietnam. Ex. 3 to Kuroiwa Decl.

7. This court's decision in *Western Duplicating v. Riso, Inc., et al.*, No. CIV S–98–0208 FCD GGH (E.D.Cal. July 23, 1999), granting RKC's motion to dismiss for lack of personal jurisdiction, is not contrary to the court's decision herein. There, the parties did not raise, the

court did not consider, and the order did not address, the general agency theory of personal jurisdiction. The Fourth Circuit's decision in *Gray v. Riso Kagaku Corp.*, 1996 WL 181488 (4th Cir. Apr. 17, 1996), likewise did not address the general agency theory of personal jurisdiction, and thus, is not contrary to the court's decision herein. Because the court finds it has general jurisdiction over RKC, the court need not address plaintiffs contention that the court may also exercise specific jurisdiction over RKC.

### 2. Motion To Dismiss For Failure To State A Claim

Even if the court determines that it has jurisdiction over RKC, RKC alternatively argues that dismissal is proper because plaintiffs have failed to state a claim against RKC upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). More specifically, RKC contends that (1) the allegations in plaintiff's complaint are directed at Riso, Inc. and its dealers, not at RKC; (2) Riso, Inc. and RKC are incapable of conspiring together in violation of antitrust laws as a matter of law; and (3) plaintiffs have never purchased from or dealt with RKC, and thus, lack standing to bring this action against RKC.

A complaint will not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his [or her] claim that would entitle him [or her] to relief." *Yamaguchi v. Department of the Air Force,* 109 F.3d 1475, 1480 (9th Cir.1997) (quoting *Lewis v. Telephone Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir. 1996)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996).

At this stage of the pleadings, the court cannot say as a matter of law that plaintiffs can prove no set of facts that would entitle them to relief. First, the allegations in plaintiffs' complaint are directed at RKC. *See* Compl. ¶ 12. Second, plaintiffs allegations are not limited to a conspiracy between RKC and Riso, Inc., but include a conspiracy between RKC and Riso, Inc.'s dealers. *See, e.g., id.* ¶¶ 18, 117, 138. Finally, plaintiffs allege that they purchased Riso products directly from antitrust violators, namely co-conspirator dealers. *See id.* ¶¶ 11, 144, 146. These allegations are sufficient to overcome RKC's motion at this stage of the pleadings. *See Dee–K*

*Enterprises, Inc. v. Heveafil Sdn. Bhd.,* 982 F.Supp. 1138, 1142 n. 6 & 1153–54 (E.D.Va.1997); *Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.,* 828 F.Supp. 216, 224 n. 21 (S.D.N.Y.1993).

### CONCLUSION

RKC's motion to dismiss for lack of personal jurisdiction, or alternatively, for failure to state a claim upon which relief can be granted is DENIED.

IT IS SO ORDERED.