In re: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION,

Alvis

v.

Glaxosmithkline, et al., No. C01–2186

No. MDL NO. 1407.

United States District Court, W.D. Washington at Seattle.

Jan. 13, 2003.

Antriss Edward, Thomas Jason Taylor, LaDonna Curto, Jo Hill, Rezso Horvath, Marta Kuehne, Anne Marie Mancebo,Jessica Black, Charles Michael Brumley, Nancy Brumley, Shirley Jean Byers, Robin Cooke, Karen Dancey, Tommy Dancey, Bonita DeMoss, Roland DeMoss, Sr., Loreta Eslin, R.D. Eslin, Diola Garza, Pedro Garza, Bobbie Ray Gentry, Lisa Grantham, Roger Grantham, James Harris, Linda Sue Hudson, Harold Jones, Patsy Marie Jones, Rose Lewis, Robert Mayes, Maria McClellan, Luz Ann Medrano, Ruben Medrano, Charles Moore, Gary Murray, Margaret Murray, Jennifer Ogbojo, Ali Parsa, Ana Marie Parsa, Beverly Pellegrin, Ronald Joseph Pellegrin, Ashley Perthuis, Jerri Lynn Perthuis, Kenny Perthuis, Michael Rees, Nancy Rees, Theresa Renteria, Nena Rideau, Stephen Rideau, Charles Scott, Karen Scott, Charles Sherwood, Mary Lynn Sherwood, Dara R. Sims, Kirk Sims, Daniel West, Janet Lee West, for pro se plaintiffs.

Christopher A. Seeger, Seeger Weiss, New York, NY, for plaintiff John Park.

David C. Greenstone, Waters & Kraus, Dallas, TX, for plaintiffs Carlota Bernal, Ramon Cardenas, Jose Garcia, Ruben Garibay, Charles Jackson, Antonia Olovas, Jose Tavarez, Ruben Valdez, Jr.

Jennifer L. Frank, Merritt T. Carey, Lewis Saul & Associates, Portland, ME, for plaintiffs Betty L. Wood, Peggy Stevens, Janet D. Sportsman, Shirley A. Sewell, Susan Schuster, Tracy Russell, Patsy Rawlings, Betty F. Pringle, Viola Pitt, Brunilda Perez, Gary Odom, Roger Dale Moore, Sharon Latofsky, Kathleen Kanouff, Keith Johnson, Amy M. George, Tine M. Fogg, Kevin Fisher, Kelly M. Delano, William G. Clymer, Joanna Brown-Clark, Letitia Bohahan, Geneva Benton, David Barbee.

Barry James Cooper, Jr., Cooper Law Firm, LLC, New Orleans, LA, Charles K. Wiggins, Wiggins & Masters, Brainbridge Island, WA, Damon A. Kirin, Robert J. Diliberto, Stephen Barnett Murray, Murray Law Firm, Jack W. Harang, Michael G. Stag, Raphael Juneau, Jr., Stuart Housel Smith, PPA Litigation Group, L.C., New Orleans, LA, Nancy Guy Armstrong, McComb, MS, Reshonda Leshay Bradford, Shreveport, LA, Ronnie Glynn Penton, Bogalusa, LA, Todd Brentley Ott, Law Office of Ronnie G. Penton, Bogalusa, LA, Viki L. Buba, Andrew J. Horne, Oldfather & Morris, Louisville KY, W. James Singleton, a Professional Law Corp., Shreveport, LA, Brian Kelly Herrington, Herrington & White, Ridgeland, MS, William M. Cunningham, Jr., Gary W. Fillingim, Peter F. Burns, Peter S. Mackey, Burns Cunningham Mackey & Fillingim, Mobile, AL, Daniel E. Becnel, Jr., Reserve, LA, James D. Gotz, Robinson & Cole, Boston, MA, James Rodney Nixon, Edward A. Williamson Law Firm, Philadelphia, MS, John Chandler Loupe, Claitor & Loupe, Baton Rouge, LA, Justin G. Witkin, Aylstock Witkin & Sasser PLC, Gulf Breeze, FL, Kenneth W. Smith, Miller & Associates, Alexandria, VA, Lambert Joseph Hassinger, Jr., Usry Weeks & Matthews, New Orleans, LA, T. Roe Frazer, II, Frazer & Davidson PA, Jackson, MS, Thomas Edward Dutton, Pittman Hooks Dutton & Hollis, Birmingham, AL, for all other plaintiffs.

Sharon L. Caffrey, Duane Morris (PA), Philadelphia, PA, Teresa Cavenagh, Duane Morris, Pennsylvania, Pa, Randy J. Aliment, Peter S. Hicks, Timothy David Blue, Darren Anthony Feidler, Williams Kastner & Gibbs, Seattle WA, for defendants Pam Holdings Inc. DE, Sidmark Laboratories, Inc., Pilva Inc., Alon Petroleum Pipeline Co., Pilva DD, Sobel NV.

Michael L. Atchley, Dallas TX, for defendant Advocare, International LLC.

Rodney L. Umberger, Jr., Jan Catherine Kirkwood, Williams Kastner & Gibbs, Seattle, WA, for Chattern Inc.

Donna Brown Jacobs, Butler Snow O'Mara Stevens & Cannada, Jackson, MS, Tyson B. Shofstahl, Adams & Reese, New Orleans, LA, for defendant Wyeth Consumer Healthcare, Inc.

Timothy Karl Borchers, Cozen O'Connor, Seattle, WA, for defendants Delaco Co., IVAX Corp.

Richard G. Placey, Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, Ronald Edward McMillan, Watkins & Eager, Jackson, MS, for defendant Novartis Consumer Health Inc.

D. Joseph Hurson, Lane Powell Spears Lubersky, Seattle, WA, Jennifer Jansen Bouchard, Ulmer Berne LLP, Cincinnati, OH, Richard G. Placey, Montgomery, McCracken, Walker & Rhoads LLP, Philadelphia, PA, Ronald Edward McMillian, Watkins & Eager, Jackson, MS, for defendant Novartis Pharmaceuticals Corp.

Henry Lockwood Miller, Couglin Duffy Kelly Lisovicz Midlige & Wolff, Morristown, NJ, Vincent Edward Gunter, Shook, Hardy, & Bacon, LLP, Kansas City, MO, Arissa M. Peterson, Douglas A. Hoffman, Williams Kastner & Gibbs, Seattle WA, Frank A. Wood Jr., Watkins & Eager, Jackson, MS, J. Todd Hedgepeth, Fulbright & Jaworski LLP, San Antonio, TX, Nicole K. Asch, Peter H. Mason, Fulbright & Jaworski, Los Angeles, CA, for defendant Bayer Corp.

Robert J. Clary, Owens, Clary, & Aiken, LLP, Dallas, TX, for defendant Alon USA Interests, LLC.

P. Arley Harrel, Williams, Kastner & Gibbs, Seattle WA, for defendant Procter & Gamble Distributing Co.

Grant J. Silvernale, III, Perkins Coie, Seattle, WA, for defendants Procter & Gamble Pharmaceuticals, Inc., Novartis AG.

Daniel Lee Keller, Sedgwick Detert Moran & Arnold (NY), New YOrk City, NY, for defendant Sanofi–Synthelabo, Inc.

Staci C. Pirnar, Babcock & Mosher, Blaine, WA, for defendants American Home Products Corp., Qualitest Pharmaceuticals, Inc.

Arthur Sherman, Sherman Salkow & Petoyan, Los Angeles, CA, Richard S. Lewis, Cohen Milstein Hausfeld & Toll, Washington, DC, John Chandler Loupe, Claitor & Loupe, Baton Rouge, LA, Lance Eugene Palmer, Levinson Friedman, Seattle, WA, Shauna C. Bryce, Sills Cummis Radin Tischman Epstein & Gross, Newark, NJ, Randolph S. Sherman, Kaye Scholer LLP, New York City, NY, Terry O. Tottenham, Fulbright & Jaworski, Austin, TX, C. Joyce Hall, Watkins & Eager, Jackson, MS, D Joseph Hurson, Lane Powell Spears Lubersky, Seattle, WA, Stephania Camp Denton, Mills Meyers Swartling, Seattle, WA, Douglas A. Hoffman, Peter S. Hicks, Timothy David Blue, Jeffrey Royal Johnson, Williams Kastner & Gibbs, Seattle, WA, Edward M. Libby, Wilson, Smith, Cochran & Dickerson, Seattle, WA, Michael J. Stortz, Drinker Biddle & Reath, San Francisco, CA, Brandi J. McKay, Sedgwick, Detert, Moran & Arnold, Los Angeles, CA, Jena W. Smith, Baldwin & Haspel, New Orleans, LA, C. Paige Herring, Scott Sullivan Streetman & Fox, Jackson MS, Millard Lane Fretland, Conroy Simberg Ganon Krevans & Abel, Pensacola, FL, for defendant Procter & Gamble Distributing Co. and Interested Parties, Counsel PLA Lead, Counsel DFT Lead, Counsel PLA Liaison, Counsel DFT Liaison, Counsel T. Haller Jackson, III and Bristol-Myers Squibb Co., Wallgreenco.

Cyntiha L. Kendrick, Katharine R. Latimer, Spriggs & Hollingsworth, Washing-

ton, DC, G. Todd Hoffpauir, James J. Montgomery, Montgomery Rennie & Jonson, Cincinnanti, OH, Rodney L. Umberger, Jr., P. Arley Harrel, Williams, Kastner & Gibbs, Seattle, WA, Sue Nations, Thomas R. Juneau, Juneau Farm, Lafayette, LA, Brandi J. McKay, Sedgwick, Detert, Moran & Arnold, Los Angeles, CA, Donna Bron Jacobs, Butler Snow O'Mara Stevens & Cannada, Jackson, MS, Jack Etherton Truitt, Truitt Law Firm, Madisonville, LA, Jena W. Smith, Baldwin & Haspel, New Orleans, LA, Kathy Ann Cochran, Wilson, Smith, Cochran & Dickerson, Seattle, WA, Ronald Edward McMillan, Watkins & Eager, Jackson, MS, Stephania Camp Denton, Mills Meyers Swartling, Seattle, WA, Tina Cutlip Jones, Womble, Carlyle, Sandridge, & Rice PLLC, Raleigh, NC, Traci Militano Caponigro, Drinker, Biddle, & Reath LLP, San Francisco, CA, Tyson B. Shofstahl, Adams & Reese, New Orleans, LA, for all other defendants.

## ORDER DENYING DEFENDANT NOVARTIS AG'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

ROTHSTEIN, District Judge.

### I. BACKGROUND

Plaintiff, a resident of Tennessee, filed a complaint in federal district court in Oregon alleging injuries stemming from her consumption of PPA-containing products. She included in this action as defendants, among others, Novartis AG ("NAG"), Novartis Corporation, Novartis Consumer Health, Inc., and Novartis Pharmaceuticals Corporation ("NPC"). NAG is a foreign corporation, organized and existing under the laws of Switzerland. It resulted from the merger of two Swiss corporations, Sandoz Ltd. ("Sandoz") and Ciba–Geigy AG ("Ciba"). NPC is a U.S. corporation, orga-nized under the laws of Delaware and with its principal place of business in New Jersey.

NAG moved to dismiss based on lack of personal jurisdiction. Plaintiff asserted the establishment of personal jurisdiction based on the existence of an agency relationship between NAG and NPC, and by attributing NPC's Oregon contacts to NAG. Defendant disputed the existence of an agency relationship between NPC and NAG, maintaining that NAG is merely a holding company of which NPC is an indirect affiliate. Plaintiff counter-moved to postpone consideration of the motion to dismiss until after the taking of jurisdictional discovery, and NAG moved for a protective order to stay merits discovery pending the resolution of its jurisdictional challenge.

In May 2002, the court struck NAG's motion to dismiss with leave to re-note pending the conclusion of jurisdictional discovery underway in an un-related case, *DaCosta v. Novartis AG et al.*, Case No. CV 01–800–BR (D.Or.), in which a court faced the identical issue of personal jurisdiction over NAG. The court also granted NAG's motion for a protective order.

In August 2002, the parties in the *DaCosta* litigation entered into a joint stipulation of dismissal following the completion of jurisdictional discovery, but prior to a resolution of the personal jurisdiction question. Plaintiff filed the current motion seeking a ruling on NAG's motion to dismiss. Having reviewed all relevant pleadings, along with the remainder of the record, and, being fully advised, the court finds and concludes as follows:

### II. DISCUSSION

■ The burden of establishing personal jurisdiction rests on plaintiff. *Overby v. Oregonian Publ'g*, 882 F.Supp. 964, 966

(D.Or.1995) (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir.1990)). The court has elected to resolve the motion on the parties' briefs, exhibits, and affidavits, rather than hold an evidentiary hearing. Therefore, plaintiff need only "make a prima facie showing of jurisdictional facts in order to defeat [the] motion to dismiss." *Farmers Ins. Exch.*, 907 F.2d at 912.[1] " 'That is, [ ] plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.' " *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995)). The court takes plaintiff's version of the facts as true for purposes of a Rule 12(b)(2) motion to dismiss, and resolves any conflicts in the evidence set forth in the affidavits in plaintiff's favor. *Id.*

■ In order to establish personal jurisdiction, plaintiff must show both that Oregon's long-arm statute confers personal jurisdiction over the nonresident defendant, and that the exercise of jurisdiction comports with due process. *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 760 (9th Cir.1990); *Overby*, 882 F.Supp. at 966. Oregon's long-arm statute confers personal jurisdiction to the extent due process allows. *Overby*, 882 F.Supp. at 966; Or. R. Civ. Pro. 4(L).

■ Satisfaction of due process occurs when a nonresident defendant has

" 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940))).[2] In addition to establishing the requisite contacts, the assertion of jurisdiction must be found reasonable. *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 107, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Unocal Corp.*, 248 F.3d at 925 (citing *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 (9th Cir.1993)).

### A. *NAG Contacts with Oregon*

NAG states its purpose as "hold[ing] interests in enterprises in the area of health care or nutrition [or] in the areas of biology, chemistry, physics, information technology or related areas." Affidavit of Brian Campf ("Campf Aff."), Ex. 11. Except through the activities of its affiliates, NAG has no physical presence and conducts no business in Oregon. NPC falls within the pharmaceuticals sector of the "Novartis Group," comprising in total some 360 affiliates in 140 different countries. *See* Campf Aff., Ex. 8. Specifically, NPC is a wholly-owned subsidiary of Novartis Finance Corporation, a U.S. holding

1. The inclusion of deposition testimony and exhibits does not convert the standard to a preponderance of the evidence. *See, e.g., Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir.1995) (prima facie standard applied where plaintiff submitted "declarations, deposition testimony, and other evidence.")

2. General jurisdiction requires that the defendant's contacts with the forum be "continuous and systematic," and applies whether or not the cause of action arises from those contacts. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414–16, 104 S.Ct. 1868. Specific jurisdiction requires a showing that the nonresident defendant purposely directed activities at residents in the forum state, and that the cause of action arises out of or is related to the defendant's forum contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

company wholly-owned by another U.S. holding company, Novartis Corporation, which is a wholly-owned subsidiary of a Swiss holding company, Novartis Holding AG, which, finally, is a wholly-owned subsidiary of NAG. *See* Decl. of Peter Kornicker ("Kornicker Decl."), ¶¶ 6–7.

There is no dispute that NPC is subject to personal jurisdiction in Oregon. *See* NAG's Opp'n at 4 & n. 1.[3] As such, the court must determine whether NPC's Oregon contacts may be attributed to NAG through an agency relationship. *See Unocal Corp.*, 248 F.3d at 925 ("Where, as here, the defendant's alleged contacts are through its corporate subsidiaries, the Court must engage in a preliminary inquiry to determine whether the subsidiaries contacts are properly attributed to the defendant.")

### 1. *Personal Jurisdiction Based on Agency:*

■ The mere existence of a parent-subsidiary relationship is not sufficient to confer personal jurisdiction over the parent based on the subsidiary's forum contacts. *Unocal Corp.*, 248 F.3d at 925.[4] Further, "a parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is 'consistent with the parent's investor status[.]'" *Id.* at 926 (quoting *United States v. Bestfoods*, 524 U.S. 51, 72, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998)). "Appropriate parental involvement includes: 'monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general

policies and procedures[.]'" *Id.* (quoting *Bestfoods*, 524 U.S. at 72, 118 S.Ct. 1876).

■ However, if the alleged parent and subsidiary are not really separate entities, or if one entity acts as an agent of the other, the subsidiary's contacts may be imputed to the parent. *Id.; Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 424 (9th Cir.1977). "An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations." *Unocal Corp.*, 248 F.3d at 926. *But see Modesto City Sch. v. Riso Kagaku Corp.*, 157 F.Supp.2d 1128, 1133–34 (E.D.Cal.2001) (finding that *Unocal Corp.* does not require plaintiff to show that a parent controls all of a subsidiary's day-to-day activities in order to satisfy the general agency test).

In order to satisfy the agency test for purposes of establishing personal jurisdiction, the plaintiff must show:

> that the subsidiary functions as the parent corporation's representative in that it performs services that are "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services."

*Unocal Corp.*, 248 F.3d at 928 (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir.1994) (quoting *Wells Fargo & Co.*, 556 F.2d at 423)). "Consequently, '[t]he question to ask is ... whether, in the truest sense, the subsidiar[y's] presence substitutes for the presence of the parent.'" *Id.* at 928–29 (quoting *Gallagher v. Mazda Motor of Am.*,

---

**3.** The parties do not specify whether NPC is subject to general or specific jurisdiction.

**4.** Whether an alleged agent is a subsidiary or independently owned is irrelevant to this

analysis. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 423 (9th Cir.1977). For the purposes of this discussion, the court will utilize the term subsidiary.

*Inc.*, 781 F.Supp. 1079, 1084 (E.D.Pa. 1992)).

In *Unocal Corp.*, the Ninth Circuit applied the agency test to a foreign holding company. In so doing, the court looked to a Pennsylvania decision in which the court:

> distinguished an agency relationship between a parent and its subsidiary from that of a holding company and its subsidiary, explaining that in the case of a holding company the parent could simply hold another type of subsidiary, in which case imputing the subsidiaries' jurisdictional contacts to the parent would be improper.

*Id.* at 929 (citing *Gallagher*, 781 F.Supp. at 1085). The court also looked to a New York decision:

> [W]here a holding company is nothing more than an investment mechanism[, i.e.,] a device for diversifying risk through corporate acquisitions[,] the subsidiaries conduct business not as its agent but as its investments. The business of the parent is carried out entirely at the parent level. Where, on the other hand, the subsidiaries are created by the parent, for tax or corporate finance purposes, there is no basis for distinguishing between the business of the parent and the business of the subsidiaries.

*Id.* (quoting *Bellomo v. Pennsylvania Life Co.*, 488 F.Supp. 744, 746 (S.D.N.Y.1980)). The court concluded that, "[a]t an irreducible minimum, .. the agent [must] perform some service or engage in some meaningful activity in the forum state on behalf of its principal such that its 'presence substitutes for [the] presence of the principal.'" *Id.* at 930 (quoting *Gallagher*, 781 F.Supp. at 1084).

**2.** *Attributing NPC's Oregon Contacts to NAG:*

▇▇ As a holding company without any employees, NAG maintains that it would necessarily have to find another entity to undertake NPC's role in NPC's absence, thus entitling it to the protection afforded the holding company in *Unocal Corp.* NAG also focuses on each of the discrete pieces of evidence offered by plaintiff, pointing out that various courts have found these factors insufficient to support personal jurisdiction. However, the court finds NAG distinguishable from the holding company at issue in *Unocal Corp.* and, in considering the totality of the evidence, finds that plaintiff establishes a prima facie case for the exercise of personal jurisdiction over NAG.

While NPC may be several layers of ownership removed from NAG, plaintiff demonstrates the existence of a management system penetrating those layers. NAG's Board of Directors, chaired by NAG CEO Daniel Vasella, is "ultimately responsible for the organization, administration and direction of Novartis and determines the company's strategy." *See* Campf Aff., Ex. 8. Vasella also chairs the Novartis Executive Committee ("ECN") which, according to company documents, "develops and implements strategies for the Group and procures and allocates the required resources." *Id.*[5] Raymond Breu, NAG's Chief Financial Officer, serves on both the ECN and on NPC's Board of Directors. *See* Kornicker Decl., ¶ 19. Thomas Ebeling, the CEO of another Novartis affiliated company—Novartis Pharma AG, represents the pharmaceutical sector, and thus NPC, on the ECN and serves on NPC's Board of Directors.[6] Ebeling

---

**5.** *See also* Campf Aff., Ex. 11 (NAG's Articles of Incorporation and Board Regulations require it to delegate to the ECN the "strategic and operative day-to-day management of the

Company and its business sectors and supporting functions.")

**6.** *See also* Aff. of Beth Strosky ("Strosky Aff."), Ex. A at 48:11–23, 50:19–51:7 (Vasella

also chairs the Innovation Management Board ("IMB") operating within Novartis Pharma AG, of which Vasella is also a member and which makes strategic drug development and funding decisions. *See* Strosky Aff., Ex. A at 106:3–114:1.

NAG rejects the significance of this evidence, pointing to the fact that Ebeling is neither a director nor an employee of NAG, portraying both the ECN and IMB as mere roundtables for discussion, and distinguishing Novartis Pharma AG, and its IMB, from NAG. However, Vasella, although the "head" of the ECN, was unable to explain "where legally [the ECN] is sitting" within the Novartis Group. *Id.*, Ex. A at 22:15–23:6; 25:23–26:1. NAG certainly does not dispel the impression that the ECN falls directly below NAG's Board of Directors in managing the Novartis Group. *See* Campf Aff., Ex. 8 (Novartis "Facts & Figures 2001/2002" listing under "Management"—NAG's Board of Directors; the ECN; and geographic and sector head representation on the ECN). Additionally, while Vasella disputes the characterization, at least two separate and recent Novartis reports describe the ECN as working on developing and implementing strategies for the Novartis Group. *See* Campf. Aff., Ex. 8 ("Novartis Facts & Figures 2001/2002") and Ex. 11 ("Articles of Incorporation of Novartis AG (22 March 2001)"). Moreover, merely pointing to Ebeling's titles and positioning within No-

vartis Pharma AG, rather than NAG, does not detract from plaintiff's argument that NAG actively controls the decisions and activities of NPC through its board, committees, and executives—wherever they may happen to officially reside within the Novartis Group.[7]

Plaintiff also goes further, pointing to specific instances in which NPC appears to have required authorization from NAG—whether that authorization was channeled through the ECN or Novartis Pharma AG—with respect to basic decisions and activities. *See, e.g.,* Campf Aff., Ex. 13 (document showing that NPC asked the ECN to approve the execution of supply agreements for certain compounds) and Strosky Aff., Ex. A, at 131:23–135:12 (Vasella's testimony that NPC would only do such a thing "as an agent" of "the global function of Business Development and Licensing organization" within Novartis Pharma AG).[8] Plaintiff also points out that NPC stepped into the role held by one of NAG's predecessors, Ciba, with respect to extensive research projects undertaken in conjunction with, among others, the Oregon Health & Sciences University ("OHSU"). For example, NPC took over the OHSU-based development of the leukemia drug "Gleevac" from Ciba. Following the conclusion of that successful research, NAG applied for the Gleevac trademark.[9]

testified that Ebeling represents NPC "indirectly and managerially," and "delegate[s] the day-to-day implementation" of NAG's directives to NPC).

7. Similarly, the fact that some of the documentary support offered demonstrates functions that reside with Novartis Pharma AG (or resided with its predecessor), rather than NAG, does not lesson the importance of that evidence.

8. *See also* Campf. Aff., Ex. 20 (NPC memorandum to ECN seeking authorization to ac-

quire the rights to a product); Ex. 21 (ECN approved the sale of certain brand name products in the U.S.); Ex. 22 ("Pharma Committee Meeting" notes indicating discussion of U.S. strategy; notes that Ebeling "may authorize the U.S. to create a Second Oncology field force in 2001."); and Ex. 23 (ECN minutes indicating ECN would approve NPC contract under condition that an early termination clause be included).

9. In a Wall Street Journal article, Vasella noted his personal involvement in ensuring

Vasella acknowledges that, although apparently referring to Novartis Pharma AG: "[W]e are paying for the research which is being performed in the U.S. We are paying for it out of Switzerland." *Id.* at 115:7–116:6. The significance of this investment is clear. NPC accounts for 43% of Novartis sales. *See* Campf Aff., Ex. 8. *See also Chan,* 39 F.3d at 1406 (including consideration of what percentage of the parent's business came from the subsidiary as a relevant factor in the agency analysis). NAG also owns nearly every patent and trademark of Novartis products sold in the United States. *See* Campf Aff., ¶ 2 (NAG owns 832 pending and registered trademarks, while NPC owns 10; NAG has 381 patents, while NPC has 4).

NAG responds that decisions as to whether to invest millions of dollars and thousands of personnel hours into drug development for sale worldwide are not the sort of day-to-day decisions NAG must remove itself from; that they are strategic decisions appropriate for parental involvement. However, the evidence proffered by plaintiff supports the conclusion that NAG's involvement extends well beyond " 'monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures[.]' " *Unocal Corp.,* 248 F.3d at 926 (quoting *Bestfoods,* 524 U.S. at 72, 118 S.Ct. 1876). *See also Modesto City Sch.,* 157 F.Supp.2d at 1133–34 (*Unocal Corp.* does not require plaintiff to show that a parent controls all of a subsidiary's day-to-day activities in order to satisfy the general agency test).

Plaintiff also presents numerous other facts and documents in support of her position. *See, e.g.,* Campf Aff., Ex. 10 (2001 annual report reflecting financial statements for "all companies which Novartis AG, Basel, directly or indirectly controls," and that NAG controls greater than 90 percent of the voting rights of almost all of its subsidiaries); Exs. 15–18 (documents reflecting "Pharma" global marketing and labeling control, and that a previously existing affiliate relied upon Sandoz and its Swiss-based drug monitoring center to provide adverse drug reports); and Ex. 24 (excerpt printed from Novartis website, including the headline "Novartis Steps up U.S. Research Investment" and "2002 Novartis AG Legal Disclaimer").

NAG correctly notes that, standing alone, this evidence might not otherwise suffice to confer agency status upon NAG and NPC. *See, e.g., Unocal Corp.,* 248 F.3d at 929 (consolidation of subsidiaries' activities into parent company's reports and indirect stock ownership insufficient to support agency relationship). However, the court does not consider these facts in isolation. Instead, the court looks to the totality of the circumstances. *See, e.g., Acorn v. Household Int'l, Inc.,* 211 F.Supp.2d 1160, 1165–67 (N.D.Cal.2002) (finding prima facie case for personal jurisdiction over holding company under totality of circumstances, including existence of unitary corporate structure, overlapping boards, and collective marketing efforts); [10]

---

the availability of Gleevac following successful drug trials:

> Vasella[ ] took personal charge of the situation early last summer, ordering a steep increase in production. "I told people not to worry about excess supplies [ ] that might never be sold[.] People had been trying to manage the testing program in a controlled way[.] We want to get this drug available to patients quickly, and to do that you simply can't stick to bureaucratic rules."

*See* Campf Aff., Ex. 14.

**10.** *Cf. Bulova Watch Co. v. K. Hattori & Co.,* 508 F.Supp. 1322, 1341 (E.D.N.Y.1981) (finding subsidiaries to be general agents where the parent corporation manufactured watches

*Arch v. American Tobacco Co.*, 984 F.Supp. 830, 837 (E.D.Pa.1997)("[T]his court believes that it should examine all relevant factors that relate to the intimacy of the relationship between the parent and subsidiary to assess whether the contacts of the subsidiary [ ] should be imputed to the parent.") Here, the court considers the facts and documents as cumulatively supporting a prima facie case for the exercise of personal jurisdiction over NAG.[11]

Plaintiff has set forth facts supportive of a finding that NAG is more than a simple investment mechanism and that, in NPC's absence, NAG would have little choice but to step in to take over NPC's operations. The fact that NAG denominates itself a mere holding company and has no direct employees does not, under these circumstances, mandate a contrary conclusion. *Cf. Modesto City Sch.*, 157 F.Supp.2d at 1135 (utilizing " 'a common sense appraisal of economic relationships' " in determining existence of agency relationship between parent and subsidiary) (quoting *Bulova Watch Co. v. K. Hattori & Co.*, 508 F.Supp.

1322, 1327 (E.D.N.Y.1981)).[12] The facts as presented by plaintiff support a determination that NPC's presence in Oregon substitutes for the presence of NAG. Plaintiff has satisfied her prima facie burden with respect to attributing NPC's Oregon contacts to NAG.

B. *Reasonableness of Exercising Personal Jurisdiction Over NAG*

As noted, the court must also consider whether the exercise of jurisdiction over NAG would be reasonable. *Asahi*, 480 U.S. at 113, 107 S.Ct. 1026; *Unocal Corp.*, 248 F.3d at 925 (citing *Amoco Egypt Oil Co.*, 1 F.3d at 851). A number of factors may be considered in making this determination, including:

(1) the extent of a defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's home state; (4) the forum state's interest in adjudicating the

and sold them to its American subsidiaries for distribution in the U.S., its largest export market: *"Large and sophisticated as it may be, it is very much the hub of a wheel with many spokes. It is appropriate, therefore, to look to the center of the wheel in Japan when the spokes violate substantive rights in other countries."*) (emphasis added).

11. To the extent other courts have reached different conclusions with respect to NAG and its predecessors, the court respectfully disagrees and notes that it here decides based on the evidence currently before this court. *Compare SGI Air Holdings II LLC v. Novartis Int'l AG*, 192 F.Supp.2d 1195, 1199–1201 (D.Colo.2002) (finding no personal jurisdiction over NAG through acts of its subsidiaries), *appeal docketed*, No. 02–1183, *with Smith v. Sandoz Ltd.*, 1:95–cv–3389–MHS, slip op. at 10–11 (N.D.Ga. Sept. 27, 1996) (attached as Campf Aff., Ex. 26) (finding prima facie case for exercise of personal jurisdiction over Sandoz Ltd. by attributing contacts of its U.S.-based subsidiary).

12. *See also Newport Components, Inc. v. NEC Home Elec., Inc.*, 671 F.Supp. 1525, 1534 n. 10 (C.D.Cal.1987) ("[M]odern courts have implicitly recognized that as the international economy becomes more interdependent, the formal but artificial separation between a foreign parent corporation and its domestic subsidiary becomes less compelling for purposes of determining personal jurisdiction. Moreover, with the increasing domination of the world economy by multinational corporations, it is appropriate to look to the parent company (i.e. the 'hub of the wheel') when its subsidiaries (i.e. the 'spokes of the wheel') violate substantive rights in foreign countries. The court agrees with this trend in the law toward greater accountability by foreign corporate entities, and will accordingly look to the 'real' rather than the 'formal' relationship between [the foreign parent company] and its subsidiaries in deciding the. jurisdiction issue.") (internal citations omitted).

dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir.2002).[13]

As a foreign corporation, NAG faces unique burdens litigating in a foreign legal system. *See Asahi*, 480 U.S. at 114, 107 S.Ct. 1026 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.") Issues of sovereignty may also be relevant. However, as the Ninth Circuit stated in *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir.1984), the sovereignty factor is not dispositive "because, if given controlling weight, it would always prevent suit against a foreign national in a United States Court."

The court does not believe these factors render personal jurisdiction over NAG in the present litigation either unreasonable or unfair. There is no dispute as to NPC's purposeful contacts with Oregon and plaintiff has established that these contacts may be attributed to NAG. Plaintiff's lawsuit stems from decisions made with respect to pharmaceutical products produced by NPC, and much of the evidence proffered by plaintiff in support of personal jurisdiction points to NAG's control over NPC's product-related decision making and activities. Any burden on NAG as a foreign corporation will be considerably lessened through its close relationship with NPC. In sum, the court finds that the exercise of personal jurisdiction over NAG would be reasonable.

## III. CONCLUSION

The court finds that plaintiff succeeds in making out a prima facie showing of jurisdictional facts sufficient to defeat NAG's motion to dismiss. Therefore, NAG's motion to dismiss based on lack of personal jurisdiction is DENIED.

---

13. *See also Asahi*, 480 U.S. at 113, 107 S.Ct. 1026 (reasonableness analysis includes consideration of "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," and the weighing of the judicial system's interest in obtaining the most efficient resolution of controversies and in furthering fundamental substantive policies).